EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

CITY OF BOWLING GREEN, KENTUCKY, Defendant.

Civ. A. No. C85–56BG(S).

United States District Court,
W.D. Kentucky.

April 19, 1985.

Jerry F. Safford, Safford, Satterfield & Lanphear, Bowling Green, Ky., for defendant.

Carolyn Howard and Katharine W. Kores, Sr. Trial Attys., argued, Johnny J. Butler, Acting Gen. Counsel, Philip Sklover, Associate Gen. Counsel, Joseph Ray Terry, Regional Atty., Lawrence J. Kamenetzky, Supervisory Trial Atty., for plaintiff.

### MEMORANDUM

SILER, Chief Judge.

After a hearing on the motion for a preliminary injunction, this Court makes these Findings of Facts and Conclusions of Law and has granted the injunction as requested by the plaintiff.

The Equal Employment Opportunity Commission (EEOC) brought this action on behalf of employees of the Bowling Green Police and Fire Departments under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (ADEA). The specific employee involved in the motion for preliminary relief is Major Elster Willoughby, a veteran of twenty-four (24) years' service with the Police Department. Because his fifty-seventh (57) birthday occurred on March 27, 1985, preliminary relief was sought to prevent the City of Bowling Green from mandatorily retiring him because of his age. A temporary restraining order was entered earlier, due to the fact that his birthday came up before the Court could hold a hearing on the preliminary injunction.

Major Willoughby's present job is primarily in administration of grants, budgeting and purchasing. However, from time to time, he is required to be available for usual police work, such as arrests, pursuits on foot, and subduing drunks.[1] He is in top physical shape for his age, as he works out regularly, jogs, walks, has lost eighty (80) pounds in weight, and has passed a physical examination with his physician.

He has good performance ratings and is well educated, holding both M.A. and B.S. degrees. The only reason he is being asked to retire is due to his age, as the City of Bowling Green requires all police officers to retire by age fifty-seven (57), unless they have not completed twenty (20) years of service, in which case they may serve until they complete the necessary twenty (20) years for retirement, if able to perform their assigned duties.

Although the City has a physical fitness test for police officers before being hired, it does not have a physical testing program thereafter. When officers become sick or injured, they are allowed to remain on the force until they can resume their regular duties, or are allowed to retire.

Before issuing preliminary relief in a case of this sort, under *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir.1977), the following must be determined:

1. Whether plaintiffs have shown a strong or substantial likelihood or probability of success on the merits.

2. Whether the plaintiffs have shown irreparable injury;

3. Whether the issuance of a preliminary injunction would cause substantial harm to others; and

4. Whether the public interest would be served by issuing a preliminary injunction.

■ Moreover, where retirement has not already occurred, preliminary relief is appropriate to maintain the *status quo* and obviate the irreparable injury of the involuntary retirement. *EEOC v. Chrysler Corp.*, 546 F.Supp. 54, 69 (E.D.Mich.1982), *aff'd*, 733 F.2d 1183 (6th Cir.1984).

### I. LIKELIHOOD OF SUCCESS ON THE MERITS

This is the primary issue initially, for if the plaintiff has little likelihood of success

---

**1.** Neither party has suggested that there should be subclasses or separate requirements for administrative positions vice patrolmen on the force, so both sides have agreed that the BFOQ standards for patrolmen apply equally to Major Willoughby. *See Mahoney v. Trabucco*, 738 F.2d 35 (1st Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984).

on the merits, this Court would feel irresponsible in granting a preliminary injunction, even when the other criteria have been met.

Major Willoughby is a person protected by the ADEA, as he is between the age of forty (40) and seventy (70). 29 U.S.C. § 631(a). Moreover, age is a determinative factor in the City's decision to forcibly retire Major Willoughby.

■ Where it is undisputed that the employee was terminated solely because of age, the burden shifts to the City to prove that the termination falls within one of the exceptions to the ADEA's prohibitions. *EEOC v. County of Santa Barbara,* 666 F.2d 373, 375 (9th Cir.1982). In this case, the City has attempted to prove the exception under 29 U.S.C. § 623(f)(1), where age is a bona fide occupational qualification (BFOQ) reasonably necessary to the normal operation of the particular business.

■ In order to prevail on the BFOQ defense, the City must show that the challenged age qualification is "reasonably related to the 'essential operation' of its business *and* must demonstrate *either* that there is a factual basis for believing that all or substantially all persons above the age limit would be unable to effectively perform the duties of the job, *or* that it is impossible or impracticable to determine job fitness on an individualized basis." *Orzel v. City of Wauwatosa Fire Dept.,* 697 F.2d 743, 753 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983). *See Tuohy v. Ford Motor Co.,* 675 F.2d 842 (6th Cir.1982).

■ In this case, the City presented two excellent expert witnesses who both stated that it was reasonable to require that police officers in the City of Bowling Green retire on or before the age of fifty-seven (57). However, they did not say it was *reasonably necessary.* Nevertheless, the Court does not find that to be fatal. Each of those witnesses also went on to state that there was a factual basis for believing that all or substantially all persons above fifty-seven (57) would be unable to effectively

perform the duties as a police officer in Bowling Green and also that it was impossible or impracticable to determine job fitness on an individualized basis.

On the other hand, the plaintiff produced an excellent expert witness, Dr. Arthur Leon, a professor at the Minnesota Medical School and a cardiologist. The Court finds his testimony to be more persuasive. According to Dr. Leon, Major Willoughby or others in his condition are able to carry out the physical and strenuous demands of the job as a police officer.

It is appropriate for the Police Department to keep statistics on certain factors present in their officers indicating a likelihood for heart disease, and those who possess a number of those factors should be tested further. At age fifty-seven (57), if a police officer did not smoke, exercised regularly and kept his weight within certain limitations, ninety percent (90%) of the officers could perform the duties of the job. All officers in the police department could be screened periodically with physical fitness and medical tests, and those who are determined to be high risks could be given a stress test. A stress test is not necessary for all officers unless they possess certain of these high risk factors. The cost for setting up such tests to determine job fitness would be $5,000.00 initially for the City and $5,000.00 per year to administer.

Therefore, this Court finds that the likelihood for success on the merits is great.

The Court is aware of the case of *Johnson v. Mayor and City of Baltimore,* 731 F.2d 209 (4th Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985). In that case, the Court held that where Congress has deemed age to be a BFOQ for federal law enforcement officers, that establishes a BFOQ for the City of Baltimore fire fighters. Although that is certainly a well-reasoned decision, in view of the rejection by the Sixth Circuit of FAA criteria for pilots as a requirement for private industry in *Tuohy v. Ford Motor Co., supra,* and the rejection of the *Johnson* decision in numerous other cases, *see, e.g., Heiar v. Crawford County,* 746 F.2d

1190 (7th Cir.1984), this Court does not follow the *Johnson* decision.

## II. LIKELIHOOD OF IRREPARABLE INJURY

Although Major Willoughby could collect damages and be reinstated at a later time, nevertheless, he would suffer from his inability to keep up with current matters in the Police Department and would suffer from anxiety and emotional problems due to compulsory retirement. *See Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

## III. SUBSTANTIAL HARM TO OTHERS

There would be no substantial harm to others. Although some of Major Willoughby's assignments have been reassigned, no other officer has been promoted to take his place yet. The City would not be harmed, and there is no indication that Major Willoughby could not perform the same duties a few days after his fifty-seventh (57) birthday that he was carrying out a few days before.

## IV. PUBLIC INTEREST

The fact that Congress passed the ADEA shows that there is a public interest in keeping persons on the job until age seventy (70). The Court sees no public interest which could be served by removing Major Willoughby from the force while this case is pending on the docket.

## CONCLUSION

Although preliminary relief has been granted for Major Willoughby, this Court feels that it should comment briefly on the problems which are inherent in such a situation. The Court does not blame the City of Bowling Green for setting up such an age limitation, as the federal government has set up its own mandatory retirement age at an earlier age. *See Johnson v. Mayor and City of Baltimore, supra.* Moreover, there is ample evidence for either side, on the issue of a BFOQ, resulting in a factual dispute left for the Court to determine. Thus, there could be a patchwork quilt of varying age qualifications from one municipality to another and from one state to another. *Compare Mahoney v. Trabucco*, 738 F.2d 35 (1st Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984) (approved mandatory retirement age of 50); and *EEOC v. Pennsylvania*, 596 F.Supp. 1333 (M.D.Pa.1984) (approved mandatory retirement age of 60); *with Heiar v. Crawford County, supra* (disapproved mandatory retirement age of 55).

Nevertheless, unless Congress amends the Act, it will be up to the Courts to determine whether employers have shown a BFOQ. It may be unfair for officers in one jurisdiction to be required to retire at age fifty-five (55), while others may work until a later age, just as it is unfair today for federal police and fire fighters to retire at age fifty-five (55) while officers carrying out similar duties for state or municipal governments may be able to retire at a later age. Nevertheless, it is not up to this Court to resolve those problems, unless the constitutionality of the Act is brought into issue. As it is not an issue in this case, it is up to the Court to decide from the facts of each particular situation whether a BFOQ has been established. Here, it has not.