Betty M. CALLICOTTE, Plaintiff,

v.

Frank C. CARLUCCI, III, Defendant.

Civ. A. No. 88–1435.

United States District Court,
District of Columbia.

June 23, 1988.

Francis R. Ridley, Jr., Washington, D.C., for plaintiff.

Patricia Carter, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

(Granting Preliminary Injunction)

BARRINGTON D. PARKER, Senior District Judge:

On June 20, 1988, an order granting preliminary injunction was entered in this proceeding with an explanation that a detailed opinion would follow. This Memorandum Opinion provides the reasons for the entry of that Order.

\*      \*      \*

Plaintiff Betty M. Callicotte, an employee at the Defense Mapping Agency, Department of Defense ("DMA" or "Mapping Agency"), brings this discrimination action alleging that the DMA failed to accommodate her dual handicap of chronic alcoholism and acute chronic mental depression. Asserting that she was wrongfully discharged and that her rights under the Rehabilitation Act of 1973 ("Act"), 29 U.S.C. § 791, *et seq.* were violated, she seeks a preliminary injunction, staying removal, pending an adjudication of the merits of her claim before an appropriate administrative hearing, or alternatively, before this Court.

The government opposes Ms. Callicotte's motion on two grounds: first, that her legal challenge is barred because she signed a "Last Chance Agreement" ("LCA") in which she waived a right to appeal her removal "in any forum whatsoever." In the event that the agreement is declared unenforceable, the government also contends that plaintiff has not met the standard for the issuance of a preliminary injunction. Specifically, government counsel argues that the DMA has satisfied the requirements of the Act in attempting to accommodate Ms. Callicotte's handicap and that she has not demonstrated any irreparable injury if relief were denied.

For the reasons set forth below, the Court concludes that the Last Chance Agreement does not preclude plaintiff from challenging her dismissal and that a preliminary injunction is warranted pending an adjudication of plaintiff's claims.

## I.

## BACKGROUND

Ms. Callicotte is a retired captain from the United States Air Force, following an 11–year military career. She has been a government civilian employee since 1978 and has been employed as a Personnel Management Specialist GS–11 step 6 at the Defense Mapping Agency since 1981.

There is no dispute that Ms. Callicotte has suffered from alcoholism both before and since her employment at the DMA. The undisputed testimony also shows that two members of her immediate family likewise suffer from alcoholism, her mother and her only sibling, a younger brother. Because of her alcoholism, plaintiff's employment record has been unsteady. On various occasions she has received reprimands for insubordination, failing to report to work and failing to complete assignments. However, the government candidly concedes that her work performance was a direct result of her disease. (Last Chance Agreement ¶ 2(b) & (c).)

During the period of her tenure with the DMA, Ms. Callicotte has attempted to combat and overcome her disease, albeit unsuccessfully. In 1982, she voluntarily entered an outpatient rehabilitation program. During the summer of 1984, she again sought counseling and participated in an Alcoholics Anonymous Program. In April 1987, she was given a 30-day unpaid leave of ab-

sence and enrolled in an intensive inpatient treatment program at the Veterans Administration Hospital, Martinsburg, West Virginia. This was the *only* time that she was granted leave to seek and receive intensive medical treatment.

Despite efforts to control her problems, she continued to suffer from alcoholism and continued to be absent from her employment. On September 15, 1987 her supervisor issued a Proposed Notice of Removal because of misconduct. In lieu of that action, the Director of Personnel, Curt Dierdorff, offered her the option of signing the Last Chance Agreement. The Agreement provided that she would continue her employment in a probationary status for two years. However, if she violated any of its terms, she faced summary dismissal without any right of appeal.

Plaintiff signed the agreement but because of her medical problems, was unable to live up to its terms and was absent from work various days for the first several months in 1988. In each instance she provided her superiors with medical statements certifying that she was absent because of her then known illness. On May 23, 1988, Ms. Callicotte received a letter advising that she would be dismissed as of May 27, 1988. One day before the effective date of dismissal counsel filed a motion for a temporary restraining order ("TRO") and a preliminary injunction. Plaintiff's motion for a TRO was granted on May 26, 1988 and, by agreement with the agency, she was placed on administrative leave with pay until June 17. At the preliminary injunction hearing held on June 16, 1988, counsel agreed to extend the administrative leave status until June 20, 1988.

At the preliminary injunction hearing, the Court heard testimony from Dr. Lawrence Kline, a psychiatrist. Dr. Kline had examined plaintiff initially on September 25, 1987 and had examined and consulted with her on three subsequent occasions. Based on his initial examination, he concluded that Ms. Callicotte suffered from chronic alcoholism and acute, chronic mental depression. At the June 16, 1988 hearing, he reaffirmed his diagnosis and recommended that Ms. Callicotte seek intensive inpatient care followed by a regular program of counseling together with medication to treat her mental depression. Dr. Kline opined that if plaintiff pursued these steps, there was a reasonable likelihood that she could overcome her problems and resume her employment. Ms. Callicotte testified that she is to enter a two week inpatient program at the Seneca Rehabilitation Center, Poolesville, Md. to be followed by a four week inpatient program at Primavera, an alcoholic treatment center in Culpepper, Va. Enrollment in the programs will commence the first week of July, 1988.

## II.

## ANALYSIS

### A. Waiver Under the Rehabilitation Act

The immediate and principal question raised by plaintiff's motion is whether a federal employee may waive her appeal rights at all and, if so, whether this particular waiver is enforceable—whether it was made knowingly, voluntarily and freely. Counsel for plaintiff argues that relinquishment of one's right to file a complaint based on discrimination is void as contrary to public policy citing *E.E.O.C. v. Cosmair Inc.*, 821 F.2d 1085 (5th Cir.1987). Government counsel refutes plaintiff's contention that such waivers are *per se* unenforceable, relying upon *McCall v. U.S. Postal Service*, 839 F.2d 664 (Fed.Cir.1988) to argue that courts have upheld similar agreements.

The last chance agreement at issue here falls directly under the *Cosmair* ruling and must be declared contrary to public policy. *Cosmair* involved a 53 year old salesperson who had been employed with one company for 18 years. Following a notice of discharge, he signed an agreement whereby the company gave him 37 weeks in severance pay and medical benefits in exchange for an agreement waiving all rights to appeal his discharge. Despite the waiver, plaintiff brought an action before the Equal Employment Opportunity Commission ("EEOC") alleging that dismissal was

solely due to his age and that any waiver of rights to file a charge was void as contrary to public policy. The Fifth Circuit agreed, holding that "a waiver of the right to file a charge is void as against public policy." *Id.* at 1090. In doing so, that court relied principally on *Town of Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 1192, 94 L.Ed. 2d 405 (1987) where the Supreme Court stated: "a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." The *Cosmair* court reasoned, at page 1090, that

> The public interest in private dispute settlement is outweighed by the public interest in EEOC enforcement of the ADEA..... Allowing the filing of charges to be obstructed by enforcing a waiver of the right to file a charge could impede EEOC enforcement of the civil rights laws. The EEOC depends on the filing of charges to notify it of possible discrimination.... *When the EEOC acts on this information, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination.* (emphasis added)

The waiver struck down in that proceeding as contrary to public policy is identical to the waiver in this litigation. Both waivers prohibited employees from filing charges of discrimination with the appropriate agency. Certainly the public policy interests in eradicating discrimination against disabled persons are as powerful as those in eliminating discrimination against the elderly.

The government's efforts to distinguish *Cosmair* on grounds that the proceeding involved a federal agency and that when

such is true, the EEOC "acts as a neutral body rather than a party," must be rejected as contrary to the statute and overriding Congressional policy to afford federal employees the same rights as private employees.[1] Prohibiting a federal employee from asserting a discrimination charge would impede EEOC enforcement of the civil rights laws in the public sector in precisely the same manner as in the private sector. Certainly the public interest in eradicating discrimination in the federal workplace is no weaker than in the private sector. Indeed, the federal government should be in the vanguard leading the charge against discrimination. *See Wagner v. Taylor*, 836 F.2d 566, 575 (D.C.Cir.1987) (federal employees have the same substantive rights and remedies under the civil rights laws as employees in the private sector).

■ The government's reliance on *McCall v. U.S. Postal Service, supra* is equally misplaced. Plaintiff in *McCall* was not handicapped and never asserted that he was discharged due to discrimination. His discharge was based on willful misconduct and he simply waived his procedural right to appeal the disciplinary action. In upholding the waiver, the court expressly contrasted the waiver of "procedures by which civil servants are hired and fired" with relinquishment of rights involving "statutes designed to provide minimum *substantive* guarantees for individual employees." *Id.* at 668. The court acknowledged that the substantive statutory rights were not waivable reasoning that the public interest in enforcing the substantive rights outweighed any contrary interest in private dispute settlement. Because the LCA forced Ms. Callicotte to waive her substantive statutory rights, the waiver must be struck down as contrary to public policy.[2]

---

**1.** While the EEOC is not vested with the same enforcement powers against federal agencies, i.e. it cannot institute an action in the federal courts, it can seek enforcement through the Attorney General. 42 U.S.C. 2000e–5(f).

**2.** The Court also concludes that Ms. Callicotte did not enter into the agreement with a free and open mind. A waiver of one's right to appeal is valid only "where overreaching or exploitation is not inherent in the situation." *Runyan v.*

*National Cash Register Corp.*, 787 F.2d 1039, 1045 (6th Cir.1986) (*en banc*). *Runyan* held that "courts should not allow employers to compromise the underlying policies of the ADEA by taking advantage of a superior bargaining position or by overreaching." *Id.* Moreover, there was no evidence of overreaching. The discharged employee was an experienced labor lawyer who signed a release agreeing to a year extension of his employment in exchange for waiving his appeal rights. "[T]he release was

## B. Exhaustion of Administrative Remedies

The government also urges dismissal of this litigation for failure to exhaust administrative remedies. Its argument is rejected. The plaintiff does not dispute the general rule requiring litigants to pursue their administrative remedies before seeking judicial review under 29 U.S.C. § 794. *See Johnson v. Orr*, 747 F.2d 1352, 1356 (10th Cir.1984); *Smith v. U.S. Postal Service*, 742 F.2d 257, 262 (6th Cir.1984). This litigation, however, falls squarely under the futility exception to the exhaustion doctrine. This exception, as its name indicates, applies "where 'following the administrative remedy would be futile *because of certainty of an adverse decision.*'" *James v. U.S. Department of Health and Human Services*, 824 F.2d 1132, 1138 (D.C. Cir.1987) quoting *Randolph–Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 105 (D.C.Cir.1986). The *James* court noted that "[r]esort to administrative remedies is 'futile' ... if the denial of relief would result from a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider." 824 F.2d at 1139.

Requiring Ms. Callicotte to file a complaint with the administrative agency would have been futile. The Merit Systems Protection Review Board ("MSPR" or "Board") has established a very clear policy of upholding waivers of one's appeal rights irrespective of whether the challenge is based on substantive statutory rights. *Ferby v. U.S. Postal Service*, 26 M.S.P.R. 451 (1985); *accord, Hayes v. U.S. Postal Service*, 36 M.S.P.R. 622 (MSPB 1988); *Hill v. U.S. Postal Service*, 31 M.S.P.R. 546 (1986); *Rose v. Department of Navy*, 31 M.S.P.R. 232 (1986). Indeed, in *Ferby*, the lead case for the agency's position, the employee was an alcoholic who challenged his dismissal alleging that the agency failed to accommodate his handicap. The MSPR refused to hear his discrimination complaint concluding that he surrendered his right to challenge such matters by voluntarily signing a last chance agreement. Under the "'four corners' of the agreement ... the appellant waived [his] right to challenge, by appeal to the Board, not only the original removal actions but also any subsequent disciplinary actions taken against them by the agency during the agreed-upon probationary period." *Ferby*, 26 M.S.P.R. at 252. Since the waiver language in this action is virtually identical to that found in *Ferby*,—Ms. Callicotte expressly waived her right to file a complaint with the MSPB or the EEO—the Board is certain to hold Ms. Callicotte's waiver valid and dismiss her complaint. Because the agency will almost surely deny relief, exhaustion is unnecessary.

## C. Preliminary Injunctive Relief

In seeking a preliminary injunction the movant must satisfy the following criteria: (1) whether plaintiff is likely to prevail on the merits; (2) whether plaintiff has shown irreparable injury absent interim relief; (3) whether injunctive relief would significantly harm other interested parties; and (4) whether the public interest would be served by granting or denying preliminary relief.

*Randolph–Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 110 (D.C.Cir. 1986); *Washington Metropolitan Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 842–43 (D.C.Cir.1977).

The government, relying on *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed. 2d 166 (1974), urges the Court to adopt a

knowingly and deliberately executed by an attorney knowledgeable in labor law and employment discrimination matters." *Id.* at 1044.

Unlike that case, Ms. Callicotte is neither an attorney nor knowledgeable in employment discrimination matters. The agency was clearly taking advantage of her precarious mental and physical state when she was obliged to "choose" between certain termination or probation under unreasonable terms. The very nature of plaintiff's disease was such that she could not control her actions, or absences. Thus there was an almost certain likelihood that she would violate the strict terms of the agreement and be subject to automatic removal. Thus the last chance agreement was nothing more than a means for the agency to avoid its obligations under the Rehabilitation Act.

higher standard for interim injunctive relief in federal personnel actions. The Supreme Court in *Sampson* required the plaintiff, a federal employee who alleged that the agency dismissed her without following the procedures under the Civil Service Act, to show irreparable injury of an "extraordinary degree" for injunctive relief, *id.* 415 U.S. at 92 n. 68, 94 S.Ct. at 953 n. 68. The Court predicated its imposition of a higher standard on the grounds that the government must be given wide latitude to handle its own internal personnel affairs. *Id.* at 83, 94 S.Ct. at 949. The Court, however, did not and has not expressly extended this rule to employees alleging violations of their statutory civil rights. Such challenges raise equally compelling, if not stronger governmental interests, in the enforcement of our nation's civil rights laws. Extending the higher standard to employment discrimination cases would undermine this vital interest in eradicating discrimination.

When evaluating motions for injunctive relief in discrimination actions, several circuit courts have refused to adopt a higher standard and relied instead on the traditional one. *See Holt v. Continental Group Inc.,* 708 F.2d 87, 91 (2d Cir.1983); *E.E.O.C. v. Anchor Hocking Corp.,* 666 F.2d 1037 (6th Cir.1981); *Porter v. Adams,* 639 F.2d 273 (5th Cir.1981).[3] This Circuit has not resolved whether or not a higher standard is required for plaintiffs challenging their dismissal on grounds of discrimination. *See Wagner v. Taylor,* 836 F.2d 566, 575 n. 66 (D.C.Cir.1987). While the Court is not persuaded that the higher standard should apply in actions brought under the civil rights laws, it need not resolve the issue for purposes of this litigation because the plaintiff has satisfied her burden under either standard.

### 1. Likelihood of Prevailing on Merits

■ The Rehabilitation Act imposes a duty on federal agencies to accommodate plaintiff's handicap.[4] The question is what constitutes accommodation—what steps must an agency take to accommodate plaintiff's recurrent alcoholism before terminating her employment? That question was answered in a recent and persuasive opinion authored by a colleague, Judge Gerhard Gesell. In *Whitlock v. Donovan,* 598 F.Supp. 126, 131 (D.D.C.1984), *aff'd sub nom.,* 790 F.2d 964 (D.C.Cir.1986), Judge Gesell wrote that Congress intended "to require federal employers to exert substantial affirmative efforts to assist alcoholic employees toward overcoming their handicap before firing them for performance deficiencies related to drinking." He also concluded that one chance is not enough: "Since it is recognized that relapse is predictable in treatment of alcoholics, an agency is not justified in automatically giving up on an employee who enters treatment but who subsequently relapses." *Id.* at 134. *Accord, Burchell v. Department of Army,* 679 F.Supp. 1393 (D.S.C.1988). But, even if after making substantial efforts to accommodate an employee's handicap, the agency determines that removal is the only option, it must conduct a formal evaluation to determine whether the alcoholism is the cause of the employee's misconduct. "If so, *the agency must offer leave without pay if the employee will seek more rehabilitative therapy that seems promising and the agency must also counsel the employee regarding disability retirement."* (emphasis added) *Id.* at 134. (Federal Personnel Manual 339–1–3(b) (May 16, 1978).)

■ In this action, the DMA made no significant efforts to accommodate plain-

---

**3.** It is worthy to note that several trial courts have concluded that the harm caused by discrimination creates a presumption of irreparable injury. *See AFGE Local 51 v. Secretary of Treasury,* 40 FEP 395 (N.D.Cal.1986) ("irreparable harm may be presumed from likelihood that a violation of the Rehabilitation Act has occurred" resulting in handicapped persons facing immediate dismissal); *see also, EEOC v. City of Bowling Green,* 607 F.Supp. 524 (W.D.Ky.1985) (injunctive relief granted where employee faces

dismissal solely due to his age). *Gibson v. U.S. Immigration and Naturalization Service,* 541 F.Supp. 131 (S.D.N.Y.1982) (violation of employees statutory civil rights constitutes irreparable injury warranting injunctive relief).

**4.** There is simply no dispute that plaintiff's alcoholism is a handicap for purposes of the Act. *Crewe v. U.S. Office of Personnel Management,* 834 F.2d 140 (8th Cir.1987).

tiff's disease nor offered her a chance to take leave without pay as required under the personnel rules. Indeed, its efforts fell far short of those held as inadequate in *Whitlock* as well as those declared sufficient in *Lemere v. Burnley*, 683 F.Supp. 275 (D.D.C.1988). In *Lemere*, upon which the government principally relies, the Federal Aviation Administration ("FAA") terminated an employee after giving *two* extended leaves-of-absence for inpatient treatment of alcoholism, and offering the worker a third leave of absence. Contrary to the FAA's concerted efforts to accommodate its employee, the Mapping Agency offered Ms. Callicotte only *one* leave of absence to undergo intensive treatment. Rather then affording plaintiff a second opportunity for treatment when she experienced a relapse, Ms. Callicotte was presented with an ultimatum—the Last Chance Agreement, followed by a notice of removal.

Nor was plaintiff's superior, Angelo Meoli, justified in concluding, based on this *single instance* of unsuccessful treatment, that she had an "extensive history of rehabilitative failures" and that the agency could not reasonably accommodate her handicap and retain her at work.[5] A single instance of "rehabilitative failure" does not constitute an "extensive history." As pointed out in *Whitlock, supra*, one relapse is not unusual for individuals with serious histories of alcoholism like Ms. Callicotte. Moreover, plaintiff had never been afforded adequate treatment prior to enrolling in the inpatient program in 1987. The agency's own Employee Assistance Program Coordinator, Mr. Paul Dirkin, confirmed this and explained to Mr. Dierdorff, the Director of Personnel, that plaintiff "did the best she could with limited resources."[6]

Moreover, the record shows that there is a reasonable likelihood that plaintiff could recover from her handicap. Dr. Lawrence Kline testified that she would likely overcome her disability if given appropriate, sustained treatment. Plaintiff herself testified to her desire to conquer her problems. Her commitment to seeking improvement is evidenced by the fact that she has already arranged to enroll in a six week intensive treatment program at two reputable treatment facilities.

Despite plaintiff's manifest desire to overcome her disabilities, the Mapping Agency never offered her a grant of leave prior to issuing its removal notice. Because the agency failed to offer an extended leave as required under Personnel Directive 339–1–3(b)(1), it violated a duty owed to plaintiff.

2. Irreparable Injury

■ In personnel discharge actions, the "requisite irreparable harm is not established ... by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown." *Holt v. Continental Group, Inc.*, 708 F.2d 87, 90–91 (2d Cir.1983), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1294, 79 L.Ed.2d 695 (1984). If this standard is more than just a theoretical possibility then this case presents the exceptional and compelling circumstances warranting the award of interim equitable relief.

Ms. Callicotte has shown that she does not have an adequate remedy at law and that the harm caused by her removal would extend far beyond financial boundaries. First, reinstatement is unlikely. The DMA is likely to fill her position as a skilled personnel manager and there is no assurances that equivalent jobs will become vacant. Second, removal would impair plaintiff's ability to keep up with the changes in the agency. Indeed, Mr. Meoli stated that the agency is in the process of implementing a new computer system requiring significant changes and retraining. Thus removal at this time would place plaintiff at a significant disadvantage. Furthermore, she has no alternative source of income if removed. She has no immediate personal or family resources to draw upon; both her

---

5. Affidavit of Angelo Meoli, Chief, Consolidated Personnel Services Office, DMA, June 9, 1988, page 4.

6. Defendant's Exhibit 10 (Letter dated October 14, 1987 from Dirkin to Dierdorff).

mother and brother are alcoholics and can offer neither financial nor emotional support. And as represented by her counsel, Ms. Callicotte has no private unemployment insurance and would likely face bankruptcy should she lose her employment and income. Most importantly, removal could cause plaintiff severe physical and emotional harm. And as Dr. Kline opined, "her resultant impoverishment will, in all probability, severely increase her depression and lead to her suicide." (Affidavit ¶ 6, March 1, 1988.)

### 3. The Balancing of Harm

While plaintiff has demonstrated that she would face irreparable injury if removed, the government has not. It merely stated that plaintiff's continued presence has caused "serious morale problems" due to the shifting of work to her already overburdened colleagues. (Meloi Affidavit at p. 4.) While the Court recognizes the difficulties caused by a less than 100 percent productive worker, the situation is generally short-term in nature and is a necessary consequence of any effort to accommodate a person's handicap in anticipation of her full recovery.[7] Moreover, the record indicates that, when in remission, plaintiff is a productive employee. Her reviews uniformly state that her work is "completely satisfactory." (Plaintiff's Exhibits 1, 2, & 3, (Performance Comments dated 8/9/85, 5/3/84, 7/10/79 respectively).)

### 4. Public Interest Favors Enforcing Discrimination Laws

Finally, the public has a strong interest in the effective enforcement of the Rehabilitation Act. *See Shirley v. Devine*, 670 F.2d 1188 (D.C.Cir.1982). Indeed, the regulations enforcing the Act direct that "The Federal Government shall become a model employer of handicapped individuals." 29 C.F.R. § 1613.703. This interest outweighs the government's claim that the public would be harmed if forced to retain an unproductive employee. The balance tips

decidedly in plaintiff's favor when, as here, the discrimination charge is well supported.

### III.

### CONCLUSION

This Court has jurisdiction over the parties and the subject matter of this proceeding. Ms. Callicotte has shown by a preponderance of the evidence that she is entitled to preliminary injunctive relief. The reasons for that determination are set forth above. An appropriate order will be entered.

---

7. The Court has kept the problem of shorthanded and overburdened staff in mind when crafting appropriate relief. While the agency must keep the position vacant pending plaintiff's completion of her intensive treatment program it only has to retain the position for her if she passes the fitness-for-duty examination and is able to perform her responsibilities.