Carol A. McELRATH, Plaintiff,

v.

Jack KEMP, Secretary, Dept. of Housing and Urban Development, Defendant.

Civ. A. No. 88–3198.

United States District Court, District of Columbia.

March 22, 1989.

Francis R. Ridley, Washington, D.C., for plaintiff.

Patricia D. Carter, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

I have heard two days of testimony and argument on plaintiff's motion for preliminary injunction. Based on the testimony and evidence offered, as well as the entire record in this case, I am now prepared to render my decision.

*Background*

Plaintiff, Carol McElrath, is an alcoholic. Ultimately, Ms. McElrath's alcoholism led to her dismissal by her employer, the Department of Housing and Urban Development ("HUD"). At the time of her dismissal, Ms. McElrath had served for 23 years as a civil servant. Most recently, and at all times relevant to this case, Ms. McElrath was employed in HUD's Office of Finance and Accounting.

Ms. McElrath's alcoholism first resulted in disciplinary action, in the form of an Official Reprimand, in September of 1985. The reprimand letter issued against plaintiff indicated that she was intoxicated while on the job; several instances of absence without leave were noted. The letter of reprimand also informed Ms. McElrath that an appointment with HUD's Employee Counseling and Occupational Health program had been arranged. At that time, Ms. McElrath voluntarily entered into a program to treat her for alcoholism.

In January of 1986, Ms. McElrath requested and received 120 hours of sick leave so that she could participate in a residential alcoholism treatment program at Karrick Hall. Despite her participation in the Karrick Hall program, Ms. McElrath suffered a relapse. This relapse occasioned instances where Ms. McElrath reported for work while intoxicated and instances where she simply failed to report for work.

On April 26, 1986, Kathleen Trygstad, chief of plaintiff's branch, issued a Notice of Proposed Removal. In an undated memorandum received by Ms. McElrath on June 6, 1986, Albert Miller, Deputy Director of the Office of Finance and Accounting, notified plaintiff of her removal, effective June 20, 1986. However, on June 20, Mr. Miller issued an addendum to his decision. That addendum stated that Mr. Miller had decided to hold plaintiff's removal in abeyance for nine months. Mr. Miller testified that this reprieve was granted due to the intervention of Ms. McElrath's Union Representative and her Counselor. According to Mr. Miller, both had indicated that Ms. McElrath's condition was treatable and that Ms. McElrath was willing to undergo treatment. Thus, Ms. McElrath was granted leave-without-pay so she could pursue treatment, and the decision to remove her was held in abeyance until March 20, 1987.

From June 24 to July 23, 1986, Ms. McElrath participated in the Father Martin Ashley Center's rehabilitation program.

It also should be noted that Ms. McElrath employment survived the period in which her removal was held in abeyance. In fact, it was not until September of 1987 that disciplinary action was again taken against Ms. McElrath.

It appears that sometime before September of 1987, Ms. McElrath suffered a relapse. Again, instances of being AWOL and intoxicated on the job were reported. As a result, Ms. McElrath was suspended for five days beginning September 28, 1987.

Apparently, Ms. McElrath's condition did not improve. Ultimately, on September 1, 1988, the chief of Ms. McElrath's branch proposed her removal. On October 28, defendant decided to remove Ms. McElrath from her position, effective November 4.

Between the date plaintiff's removal was proposed and the date of her removal, Ms. McElrath, by her own efforts, enrolled in HUD's Employee Assistance Program for treatment of her alcoholism.

On November 4, 1988, Ms. McElrath was removed from her position. On that very day, she filed a complaint and motion for a temporary restraining order in this Court. Ms. McElrath brought that action as a *pro se* plaintiff and sought to enjoin her removal.

On March 14, 1989, Ms. McElrath, again of her own volition, was admitted into the Montgomery County Quarterway House, a 21–day residential addiction program. Presently, she is participating in the in-patient treatment program at the Quarterway House.

*Jurisdiction*

■ As a preliminary matter, defendant asserts that this Court does not have jurisdiction to hear plaintiff's case. Defendant bases this position on the fact that Ms. McElrath failed to file a timely appeal of her dismissal. Defendant notes that relevant provisions of the Rehabilitation Act, under which this action is brought, require that an EEO Counselor be contacted within 30 days of the alleged discriminatory event. The Complainant then must file an administrative complaint if counselling is not successful. Finally, after 180 days from the time the administrative complaint has been filed, an action in district court may be brought.

Ms. McElrath failed to properly follow these procedures. Thus, defendant urges this Court to dismiss Ms. McElrath's action.

In addition to the government's recitation of the precise timing requirements of a Rehabilitation Act claim, there are other relevant facts that must be taken into account in this case. It is conceded by all parties that when plaintiff was removed from her job, she was in the throes of an alcoholism relapse. Further, plaintiff not only faced the prospect of losing her job, she faced the prospect of becoming homeless.

Under these circumstances, plaintiff did not follow the exact procedures and notify the EEO Counselor of her complaint. Clearly, plaintiff, a Grade–5 clerk suffering from chronic alcoholism and suddenly without a job, was too confused and insufficiently versed in the procedural niceties of the Rehabilitation Act to comply with the administrative requirements.

Nevertheless, plaintiff, instead of filing an administrative action, did come to court seeking a TRO. The action was filed on the very date her dismissal was to take effect. Had plaintiff followed the proper administrative course, there is no doubt that her filing with the EEO Counselor would have been timely.

■ Based on these circumstances, the equities of this case and simple notions of fairness, I am prepared to rule that plaintiff's complaint shall be deemed constructively filed. Indeed, I suggested to the parties that it would be expeditious and eminently sensible to remand this case to the proper administrative body and require plaintiff to exhaust her administrative remedies. Of course, such a remand would be ineffectual unless defendant agreed to forgo its claim that plaintiff had failed to file her administrative action in a timely fashion.

In response to this request, defendant's counsel indicated that her office is either unable or unwilling to stipulate to the outlined course of action unless this Court dismisses plaintiff's action. If I were to take the action requested by defendant's counsel there would be no means by which this Court could assure that plaintiff's case would not be dismissed on the administrative level *sua sponte* for failure to file a timely complaint. As I stated in court, I cannot permit such a course to be followed without retaining jurisdiction to assure that this Court's decision is properly effectuated.

Further, based on the representations of both counsel in open court on March 20, 1989, I now have determined that remanding this case to the appropriate administrative body would be futile.[1] At trial, the parties seemed to agree that in all likelihood the administrative case would be decided on the timeliness issue and that the merits of the case would not be reached.

*Preliminary Injunction Standard*

For plaintiff to prevail on a motion for a preliminary injunction, plaintiff must demonstrate that: (1) plaintiff is likely to prevail on the merits; (2) plaintiff will suffer irreparable injury absent interim relief; (3) injunctive relief will not significantly harm other interested parties; and (4) the public interest will be served by granting preliminary relief.[2]

Additionally, the defendant argues that this case requires the plaintiff to meet the heightened standard of irreparable injury "to an extraordinary degree."[3] Although the Supreme Court, in *Sampson v. Murray*, held that injunctive actions in the context of federal employment required this heightened standard, the Court has yet to determine whether this standard shall apply in cases seeking to vindicate statutory civil rights. Clearly, the interests expressed by the adoption of the Title VII and the Rehabilitation Act, as well as other civil rights statutes, parallel or exceed the government's interest in preventing interference with federal personnel matters.

Thus far, several Circuits have rejected the higher standard in the employment discrimination context.[4] This Circuit, however, has failed to address conclusively whether a higher standard should apply in actions brought under the civil rights statutes.[5] I am not persuaded that a higher standard should apply in actions brought pursuant to the civil rights laws.[6] Nevertheless, I need not resolve this issue because plaintiff has satisfied her burden under either standard.

*Success on the Merits*

 This action is brought pursuant to the Rehabilitation Act. There is no dispute that plaintiff is an alcoholic and entitled to the benefits of Section 501 of the Act. Section 501 creates in federal employers, such as HUD, a duty to accommodate employees who suffer from handicaps, including alcoholism.[7]

Recent opinions by my brethren, in particular Judge Barrington Parker and Judge Gerhard Gesell, have forcefully articulated the obligations of federal employers to their alcoholic employees.[8] Specifically, Judge Gesell wrote:

---

**1.** See *James v. U.S. Department of Health and Human Services*, 824 F.2d 1132, 1138 (D.C.Cir. 1987); *see also Callicotte v. Carlucci*, 698 F.Supp. 944, 948 (D.D.C.1988).

**2.** See *Randolph–Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 110 (D.C.Cir.1986); *Washington Metropolitan Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 842–43 (D.C. Cir.1977); *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921 (D.C.Cir.1958).

**3.** See *Sampson v. Murray*, 415 U.S. 61, 84, 92 n. 68, 94 S.Ct. 937, 950, 953 n. 68, 39 L.Ed.2d 166 (1974).

**4.** See *Holt v. Continental Group Inc.*, 708 F.2d 87, 91 (2d Cir.1983); *EEOC v. Anchor Hocking Corp.*, 666 F.2d 1037 (6th Cir.1981).

**5.** See *Wagner v. Taylor*, 836 F.2d 566, 575 n. 66 (D.C.Cir.1987); *Callicotte*, 698 F.Supp. at 949.

**6.** See *Callicotte*, 698 F.Supp. at 949.

**7.** See *Whitlock v. Donovan*, 598 F.Supp. 126, 129–34 (D.D.C.1984).

**8.** See *Callicotte*, 698 F.Supp. 944 (Parker, J.); *Whitlock*, 598 F.Supp. 126 (Gesell, J.); *see also Lemere v. Burnley*, 683 F.Supp. 275 (D.D.C.1988) (Revercomb, J.); *Walker v. Weinberger*, 600 F.Supp. 757 (D.D.C.1985) (Jackson, J.).

when an employee's performance deficiencies are suspected to be due to alcohol, the agency is obligated first to offer counseling to the employee. If the employee rebuffs the offer, and if the deficiency in his [or her] work is such that discipline would be warranted, the agency should offer a 'firm choice' between treatment and discipline. An agency is obligated to follow through with its firm choices. Since it is recognized that relapse is predictable in treatment of alcoholics, an agency is not justified in automatically giving up on an employee who enters treatment but who subsequently relapses. In such a case, the agency may follow through with discipline short of removal. However, the agency is obligated before removing the employee from its work force to evaluate whether keeping the employee presents an undue hardship.... If removal seems to be the only feasible option, the agency is obligated to conduct a formal evaluation, including a fitness-for-duty examination if necessary, to confirm whether the employee's alcoholism disease is in fact responsible for the employee's poor performance. If so, the agency must offer leave without pay if the employee will seek more extensive rehabilitative therapy that seems promising, and the agency must also counsel the employee regarding the disability.[9]

In the present case, defendant argues that plaintiff was given, on two occasions, opportunity to pursue treatment. Nevertheless, plaintiff suffered from relapses and failed at all times to adequately perform her duties. This, defendant urges, satisfies its duty to accommodate the plaintiff and provides sufficient cause to warrant removal.

It is recognized that alcoholism poses a difficult question to employers. There must be a balance between an agency's ability to discharge its mission and its duty to consider humane and effective ways of dealing with an employee who is obviously suffering from a disease that is often beyond the employee's own control.

This is the situation in this case. The testimony is clear that Ms. McElrath is a chronic alcoholic. While the performance evaluations of the employee show that she discharged her job in a fully satisfactory manner, the testimony from her supervisor was quite different. The plaintiff's supervisor testified that there was rarely a day when the plaintiff was not inebriated. While Ms. McElrath could perform her duties for a few hours a day, during long portions of the day she was under the influence of alcohol and her performance was unsatisfactory. There were times when the plaintiff was so inebriated that she was found asleep under her and other employees' desks. The agency suffered this employee's illness for a long period of time and cannot completely be faulted for the manner in which it attempted to deal with this employee's alcoholism.

Nevertheless, as Judge Gesell noted in his *Whitlock* opinion, "relapse is predictable in the treatment of alcoholics. [Therefore,] an agency is not justified in automatically giving up on an employee who enters treatment but subsequently relapses."[10] Where relapse occurs, the agency is under a duty to determine whether an action other than dismissal is available that will not impose undue hardship on the agency. Indeed, once an employee has shown evidence that her handicap can be accommodated, the burden of persuasion is on the agency to show that it cannot accommodate the employee.[11]

In this case the agency has not met its burden. Ms. McElrath has demonstrated that treatment is available and that she is willing to pursue that treatment. I am persuaded, based on the expert testimony as well as plaintiff's own testimony, that there is some likelihood that Ms. McElrath will recover.

It is clear that accommodating Ms. McElrath will not unduly burden the agency. It is a fact that the agency did not even

---

9. *Whitlock*, 598 F.Supp. at 133–34.

10. 598 F.Supp. at 134.

11. *Id.* at ·137.

consider the possibility of having the employee take leave-without-pay while she underwent a treatment program. Moreover, the testimony is clear that the employee did not maintain a critical position within the agency. Indeed, the position was being phased out; and after the plaintiff was terminated, her duties were filled by a temporary employee who currently occupies the position. Thus, allowing plaintiff to take leave-without-pay will not present any undue hardship to the agency.

Permitting plaintiff to take leave-without-pay would seem to be a prudent step to take, particularly in view of the fact that the employee in question has had 23 years of government service and that the employee's inability to perform was entirely the result of alcoholism.

Based on the forgoing, I have concluded that by not offering plaintiff leave-without-pay, HUD failed to properly accommodate Ms. McElrath. Accordingly, plaintiff has demonstrated that she is likely to prevail on the merits of this case.

### Irreparable Injury to an Extraordinary Degree

The defendant argues that irreparable harm cannot be established by financial distress or inability to find other employment unless truly extraordinary circumstances are shown. This, however, is a case where plaintiff has demonstrated extraordinary circumstances.

Plaintiff produced three experts all who testified that Ms. McElrath's recovery hinges in large part on the expectancy that she will go back to work when she recovers. Because Ms. McElrath is estranged from her family, the social environment offered at work has become the mainstay of her life. Indeed, even while suffering from severe bouts of alcoholism, Ms. McElrath attempted to go to work.

Further, Ms. McElrath has no means of financial support. Not only has she been dismissed from her job, the District of Columbia has denied her unemployment benefits because she is an alcoholic. Currently, Ms. McElrath has no income, no medical benefits and no home. She could not even pay for the physical exam that was required to obtain disability retirement, and prior to entrance into her current treatment program Ms. McElrath was forced to spend a night sleeping in an abandoned car. I have no doubt that failure to reinstate Ms. McElrath will, in effect, be throwing this woman on the ash heap of society.

I have determined that plaintiff will suffer irreparable harm to an extraordinary degree if this injunction is not issued.

### Balancing of the Harm

As discussed above, plaintiff will suffer harm if an injunction is not issued. In contrast, HUD will not come to a halt if plaintiff is reinstated and provided with the reasonable accommodation to which she is entitled under the Rehabilitation Act. Indeed, as I stated before, the defendant has failed to demonstrate undue hardship will flow from accommodating Ms. McElrath's alcoholism.

### Public Interest Favors Enforcing the Discrimination Laws

The public has a strong interest in the effective enforcement of the Rehabilitation Act.[12] Because I have determined that plaintiff has a strong claim of discrimination, the interest in enforcing the discrimination laws clearly outweighs the government's claim that the public would be harmed if forced to retain an unproductive worker.

### Conclusion

Based on the forgoing, I have determined that plaintiff has met the standards for issuance of a preliminary injunction. Although Ms. McElrath has not had a great deal of success in treating her alcoholism she seeks another chance. She presently is undergoing intensive treatment and several experts have indicated that her prognosis, while guarded, is promising.

This is most likely the last chance for Ms. McElrath. Extending her that chance, as required by law, will not in any way harm or prejudice the government.

12. *See Shirey v. Devine,* 670 F.2d 1188 (D.C.Cir. 1982).

Accordingly, I am prepared to issue an order requiring the reinstatement of the employee on a leave-without-pay basis as part of this preliminary injunction. At such time as the plaintiff is able to demonstrate, through medical examination, that she is fit for duty and is undergoing a prescribed course of treatment, she is to be reinstated.

Further, should plaintiff fail to comply with the regime for aftercare treatment as developed by plaintiff's expert witness Dr. Lawrence Y. Kline, which includes, *inter alia*, total abstinence from the use of alcohol, participating in Alcoholics Anonymous, remaining under the care and/or in contact with an alcoholism counselor and taking the drug Antabuse (if medically prescribed), or should a physician find plaintiff to be unfit for duty due to her alcoholism, the defendant shall have the right to move to dissolve this injunction or to provide other appropriate relief.

This opinion constitutes my findings of fact and conclusions of law. Of course, these determinations are preliminary; the government shall have the right to revisit any and all of these issues when this case comes to be heard on the full merits.

An appropriate order accompanies this opinion.

### ORDER

On this date, the Court issued its opinion on plaintiff's motion for a preliminary injunction. For the reasoning set forth in that opinion and based on the entire record in this case, it is

ORDERED that the Court has jurisdiction over this case; it is

FURTHER ORDERED that plaintiff's complaint shall not be dismissed for failure to exhaust administrative remedies; it is

FURTHER ORDERED that plaintiff's motion for a preliminary injunction shall be and hereby is granted; it is

FURTHER ORDERED that the defendant, within five (5) days, shall reinstate plaintiff on a leave-without-pay basis pending the final resolution of this case; it is

FURTHER ORDERED that at such time as plaintiff is able to demonstrate, through medical examination, that she is fit for duty, plaintiff shall be reinstated pending the final resolution of this case; it is

FURTHER ORDERED that should plaintiff fail to comply with the regime for aftercare treatment as developed by plaintiff's expert witness Dr. Lawrence Y. Kline, which includes, *inter alia*, total abstinence from the use of alcohol, participating in Alcoholics Anonymous, remaining under the care and/or in contact with an alcoholism counselor and taking the drug Antabuse (if medically prescribed), or should a physician find plaintiff to be unfit for duty due to her alcoholism, the defendant shall have the right to move this Court to dissolve this preliminary injunction or to provide other appropriate relief; it is

FURTHER ORDERED that this Court shall retain jurisdiction to provide such other and necessary relief the Court may deem appropriate.