# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-1965

DEBORAH J. JACKSON, APPELLANT,

AND

No. 03-1717

THOMAS W. KELLY, APPELLANT,

V.

ERIC K. SHINSEKI,

SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Motion For Review of Appellants' Fee Agreements

(Argued January 28, 2009                                    Decided April 29, 2009)

*Kenneth M. Carpenter* of Topeka, Kansas, for the appellants.

*Edward V. Cassidy, Jr.*, with whom *Paul J. Hutter*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel, and *David J. Lowenstein*, were on the brief, all of Washington, D.C., for the appellee.

Before GREENE, *Chief Judge*, KASOLD and HAGEL, *Judges*.

GREENE, *Chief Judge*: These consolidated cases present the questions of whether, under 38 U.S.C. § 7263, the Court has jurisdiction to review the fee agreements between appellants Deborah J. Jackson and Thomas W. Kelly and their counsel Kenneth M. Carpenter and, if so, (1) whether Mr. Carpenter is required to offset that portion of the Court's award of fees and expenses under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), granted for work performed on behalf of Ms. Jackson before the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) against the 30% contingency fee provided for by the parties' fee agreement, and (2) whether the work

done on behalf of Mr. Kelly at a VA regional office (RO) to obtain an earlier effective date is the same work as that done at the Court to secure a remand eventually leading to the assignment of an earlier effective date.

## I. RELEVANT BACKGROUND

### A. Jackson

On August 10, 2004, the Court issued a single-judge order affirming a July 19, 2001, Board of Veterans Appeals (Board) decision that denied Ms. Jackson's 38 U.S.C. § 1151 claim for compensation for post-traumatic stress disorder (PTSD). Judgment issued on September 1, 2004. Ms. Jackson appealed and on December 30, 2005, the Federal Circuit reversed this Court's decision and remanded the matter for further proceedings. *Jackson v. Nicholson*, 433 F.3d 822 (Fed. Cir. 2005). On June 6, 2006, the Court vacated the 2001 Board decision and remanded the matter. In September 2006, Ms. Jackson filed an EAJA application for an award of $15,929.22, which included $14,758.12 in attorney fees and $1,171.10 in expenses. The Secretary opposed that application in December 2006.

As a result of the Court's remand, the Board awarded to Ms. Jackson $50,746.00 in past-due benefits. Subsequently, Ms. Jackson paid to Mr. Carpenter $15,223.80, which was 30% of the total past-due benefits awarded as contracted in their fee agreement. On September 20, 2007, the Court granted in full Ms. Jackson's EAJA application. Additionally, Ms. Jackson filed a supplemental EAJA application in the amount of $1,907.40 in attorney fees and $24.94 in expenses related to her defense of the EAJA application. The Court granted the supplemental EAJA application in full and mandate on the EAJA application issued.

On November 21, 2007, Mr. Carpenter sent to Ms. Jackson a check in the amount of $7,664.75, representing a partial offset of the EAJA fee award against the fees paid to Mr. Carpenter pursuant to the fee agreement. On November 26, 2007, Mr. Carpenter submitted an opposed motion for review of the fee agreement pursuant to 38 U.S.C. § 7263(c). On November 30, 2007, the Court recalled its EAJA mandate and entered judgment. On December 6, 2007, the Court filed Mr. Carpenter's motion.

2

## B. Kelly

On January 26, 2005, the Court granted the parties' joint motion for remand of a June 3, 2003, Board decision that had declined to reopen Mr. Kelly's previously disallowed claim for service connection. Mandate issued the same day. On February 2, 2005, Mr. Kelly filed an application for attorney fees and expenses under the EAJA, which the Court granted in full on March 30, 2005. The EAJA mandate issued that same day.

On remand from the Court, and after further development before VA, Mr. Kelly was granted service connection for Briquet's syndrome and awarded past-due benefits in the amount of $18,035.00, from which Mr. Carpenter was paid $5,410.50 pursuant to the parties' fee agreement. That amount was offset from the $10,305.87 previously awarded under EAJA, leaving a balance of $4,895.37.

In September 2006, Mr. Kelly filed a Notice of Disagreement (NOD) as to the assigned effective date of the award of service connection. After further development, Mr. Kelly was assigned an earlier effective date and another award of past-due benefits was granted in the amount of $4,112.00 based on the appealed effective date issue. From these funds, the veteran paid Mr. Carpenter $1,233.60 pursuant to their fee agreement.

On December 18, 2007, Mr. Carpenter filed a motion for review of the fee agreement pursuant to 38 U.S.C. § 7263(c). After oral argument, on January 29, 2009, Mr. Carpenter filed a motion to withdraw his motion for review of the fee agreement.

## II. CONTENTIONS OF THE PARTIES

### A. Jackson

In his request for review, Mr. Carpenter seeks the Court's review of his fee agreement under *Carpenter v. Principi*, 15 Vet.App. 64 (2001). The question presented is whether Mr. Carpenter's fee agreement would be excessive and unreasonable if there was no offset against the 30% contingent fee paid of the portion of Ms. Jackson's EAJA award that was granted for work performed before the Federal Circuit and for work performed in defense of the initial EAJA application, i.e., his supplemental fee application. Mr. Carpenter argues that, while *Carpenter, supra,* required an

3

offset for the grant of EAJA fees made in the initial application, it was unclear if this holding applied to supplemental fees or to fees for work performed before the Federal Circuit.

The Secretary contends that Mr. Carpenter's motion for review of the fee agreement should be denied on the basis that the Court lacks jurisdiction to review the fee agreement because there is neither a final adverse Board decision on the fee matter nor a pending appeal before the Court on any aspect of Ms. Jackson's case. The Secretary notes that in June 2006, the Court vacated the July 2001 Board decision and remanded the matter, and that in August 2006 mandate was issued. He further notes that Ms. Jackson did not appeal the May 2007 RO decision that effectuated the grant of service connection for PTSD and assigned an effective date and disability rating. The Secretary asserts, therefore, that the Court is precluded from now reviewing the fee agreement because "the Court may review a fee agreement only when there is a Board decision addressing a fee agreement or pursuant to an appeal properly before the Court." Response (Resp.) at 4. If the Court assumes jurisdiction over the fee agreement, the Secretary argues that offset of the EAJA fees awarded for work performed before the Federal Circuit is required because "it is settled law that the work performed at any tribunal on the same case is considered the 'same work' for offset purposes." *Id.* at 12.

### B. Kelly

Mr. Carpenter requested that the Court advise him of whether he is obligated to offset this Court's award of EAJA fees against the attorney's fees paid to him by Mr. Kelly. The Secretary argues that the Court lacks jurisdiction to review the fee agreement because there is neither a final adverse Board decision on the fee matter nor a pending appeal before the Court on any aspect of Mr. Kelly's case. He argues that should the Court assume jurisdiction, an offset is required as the work done to secure an earlier effective date is the same work as that done to secure an award of service connection.

### III. ANALYSIS

### A. Court's Authority to Review the Fee Agreement

Section 7263 of title 38, U.S. Code, provides that "[a] person who represents an appellant before the Court shall file a copy of any fee agreement between the appellant and that person with the Court at the time the appeal is filed." 38 U.S.C. § 7263(c). Pursuant to section 7263, "[t]he

Court, on its own motion or the motion of any party, may review such a fee agreement." 38 U.S.C. § 7263(c). However, the Court's jurisdiction to review fee agreements under section 7263(c) is narrow. *Carpenter*, 15 Vet.App. at 71. "In reviewing a fee agreement under subsection (c) of . . . section [7263] . . ., the Court may . . . order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable." 38 U.S.C. § 7263(d). Section 7263 is not, however, jurisdictional in nature. *See Wick v. Brown (In re Wick)*, 40 F.3d 367, 371 (Fed. Cir. 1994); *In re Fee Agreement of Cox*, 10 Vet.App. 361, 366 (1997) ("[N]either [38 U.S.C. §] 5904 nor any other section of title 38 confers jurisdiction upon the Court to review an attorney-fee agreement absent a final Board decision over which the Court has jurisdiction."), *vacated in part on other grounds, sub nom. Cox v. West*, 149 F.3d 1360 (Fed. Cir. 1998). Rather, section 7263 authorizes the court to "review" fee agreements between an appellant and a person representing the appellant before the Court when an appeal is properly before the Court and when a copy of the fee agreement has been filed with the Court at the time the appeal is filed. 38 U.S.C. § 7263(c). Thus, the Court has authority to review fee agreements only when there is a Board decision concerning a fee agreement or pursuant to an appeal properly before the Court. *See In re Wick*, 40 F.3d at 371-72 (Court has no jurisdiction over fee agreement pertaining to case once Court's appellate jurisdiction as to case itself has been terminated); *Cox, supra*; *Fritz v. Nicholson*, 19 Vet.App. 377, 380 (2005).

### 1. *Jackson*

The mandate of the Court is "evidence that a judgment has become final." U.S. Vet.App. R. 41; *see also* 38 U.S.C. § 7291(a) (stating that decision from this Court "becomes final upon the expiration of the time allowed for filing, under [38 U.S.C. §] 7292 . . ., a notice of appeal from such decision, if no such notice is duly filed within such time."). At the time that Mr. Carpenter filed his motion to review the fee agreement between himself and Ms. Jackson, the EAJA mandate had not issued. As discussed below, an EAJA application is "a component part of an integrated case" and not a separate action from the merits phase of the litigation. *Comm'r, INS v. Jean*, 496 U.S. 154, 161-62 (1990) (for purposes of EAJA, treating "civil action . . . brought . . . against the United States", 28 U.S.C. § 2412(d)(1)(A), as "an inclusive whole, rather than as atomized line-items" and treating EAJA application and litigation over it as "a component part of an integrated case"). Thus, although the Court's decision regarding the underlying merits action had become final, at the time

5

that Mr. Carpenter filed his motion to review the fee agreement, the EAJA portion of the appeal was properly before the Court. The Court concludes, therefore, that because the "civil action" was pending before the Court at the time that Mr. Carpenter filed his motion for review of the fee agreement, the Court has jurisdiction to entertain that motion in the matter of *Jackson v. Shinseki,* No. 01-1965. *See Wick* and *Cox*, both *supra*.

### 2. Kelly

Mr. Kelly's case was remanded by the Court in January 2005 and on March 30, 2005, his EAJA application was granted in full. Mandate issued that same day. Thus, Mr. Kelly's case before the Court became final on March 30, 2005. Mr. Carpenter has not appealed any subsequent Board decision covered under the fee agreement. Accordingly, the Court is without jurisdiction to entertain the motion presented by Mr. Carpenter in the case of *Kelly v. Shinseki*, No. 03-1717, presented for review because there is no case currently pending before the Court and there is no Board decision regarding the fee agreement entered into by Mr. Kelly and Mr. Carpenter. *See Wick, Fritz,* and *Cox*, all *supra*.

Indeed, Mr. Carpenter recognized at oral argument that because the underlying matter at issue here, including the Court's resolution of the EAJA application, had become final, the Court is without jurisdiction to review the matter. Accordingly, Mr. Carpenter's January 29, 2009, motion to withdraw his motion for review of the fee agreement will be granted.

### B. Work Performed Before the Federal Circuit

The fee agreement between Ms. Jackson and Mr. Carpenter purports to cover services related to "an appeal to the United States Court of Appeals for Veterans Claims and if required to continue the representation of the Client before the Department of Veterans Affairs to include the Board of Veterans' Appeals." Motion (Mot.), Exhibit (Exh.) A at 2. The fee agreement provides for payment of "a fee equal to thirty percent (30%) of the total amount of any past-due benefits awarded to Client . . . on the basis of the Client's [c]laim(s) with the Department of Veterans Affairs." *Id.* at 6. The agreement further states that "[i]f the amount of fees paid under EAJA exceed the percentage called for in this Agreement, the Client shall not be liable for any further fees pursuant to this Contract." *Id.* at 8.

6

The fee agreement does not expressly cover Mr. Carpenter's work done before the Federal Circuit on appeal from this Court. Indeed, at oral argument, Mr. Carpenter stated to the Court that his continued representation of Ms. Jackson before the Federal Circuit in the underlying case was done on a pro bono basis. Thus, it is clear that the agreement does not provide for an offset of that portion of the EAJA awarded for work performed before the Federal Circuit against the contingency fee paid. The Court must therefore determine whether, under this fee agreement, the work performed before the Federal Circuit but not covered in the fee agreement, is the "same work" as that performed before this Court and VA. In doing so, the Court is mindful that "in the absence of sufficient factual allegations supporting the parties' mutual intent," contract ambiguities are construed "against the drafter, unless the ambiguity is patent." *Dureiko v. U.S.*, 209 F.3d 1345, 1357 (Fed. Cir. 2000); *see Royal Ins. Co. of America v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 424 (6th Cir. 2008); *Shelby County State Bank v. Van Diest Supply Co.*, 303 F.3d 832, 838 (7th Cir. 2002).

When an attorney fee agreement in a case before the Court contemplates direct payment by the Secretary from past-due benefits under 38 U.S.C. § 5904(d)[1], and an additional award of fees for the "same work" is made under the EAJA,"the claimant's attorney refunds to the claimant the amount of the smaller fee." *See* Federal Courts Administration Act (FCAA), Pub.L. No. 102-572, § 506(c), 106 Stat. 4506, 4513 (1992). Here, Mr. Carpenter is not seeking direct payment from the Secretary pursuant to section 5904(d). However, in *Shaw v. Gober*, the Court concluded that the same offset standard applies in cases where an attorney is not seeking direct payment by the Secretary because "the policy underlying the proscription in section 506 [of the FCAA] against double payment for the same legal work is inherent in the policy against an 'unreasonable' fee embodied in section[] . . . 7263(d)." 10 Vet.App. 498, 504 (1997). In *Shaw*, the Court discussed the general policy against "double-dipping," stating that it was "divined from the legislative history of section 206 of Pub. L.

[1] 38 U.S.C § 5904(d) provides for the "[p]ayment of fees out of past-due benefits" and states that "[w]hen a claimant and an agent or attorney have entered into a fee agreement described in paragraph (2), the total fee payable to the agent or attorney may not exceed 20 percent of the total amount of any past-due benefits awarded on the basis of the claim." Paragraph (2) provides that a fee agreement referred to in paragraph (1) is one where the total fees payable to the agent or attorney "(i) is to be paid to the agent or attorney by the Secretary directly from any past-due benefits awarded on the basis of the claim; and (ii) is contingent on whether or not the matter is resolved in a manner favorable to the claimant." 38 U.S.C § 5904(d)(2)(A).

No. 96-481, 94 Stat. 2321, 2330 (1980), as amended by Pub. L. No. 99-80, § 3, 99 Stat. 183, 186 (1985) (found at 28 U.S.C. § 2412 note) relating to the Social Security Act (SSA)," which "contains language that essentially mirrors that found in FCAA § 506(c)." *Id.* The Court observed:

> The legislative history of section 206 relating to SSA explained: "Without this amendment [precluding an attorney for a Social Security or Supplemental Security Income (SSI) claimant from receiving both EAJA and SSA fees] it was argued, 'double dipping' was possible. Such double payments are inappropriate and deprive[] the plaintiff of the benefits intended by EAJA." H.R. REP. NO. 99-120, pt. 1, at 148-49 (1985) (EAJA Extension and Amendment) (Section-by-Section Analysis describing section 3 of H.R. 2378, which was identical to provision ultimately enacted in Pub. L. No. 99-80); *see Wells v. Bowen*, 855 F.2d 37, 42 (2d Cir. 1988) ("Congress clearly intended the two statutes to work in conjunction and that dual fee applications [under the SSA and EAJA] are not improper as long as the lesser of any two amounts awarded goes to the attorney's client"; indeed, "attorney working under contingent-fee agreement can best defray the client's cost of legal services by seeking both EAJA and SSA fees".). The House Committee report stated that, although the attorney would be permitted "to seek recovery under both authorizations [the EAJA and SSA] . . . [,] the attorney . . . may keep the larger fee, but must return the amount of the smaller fee to the claimant." H.R. REP. 99-120, pt. 1, at 149.

*Id.* Further, in discussing the payment of fees under both 42 U.S.C. § 406, governing fee awards for successful representation of Social Security benefit claimants, and the EAJA, the U.S. Supreme Court determined that Congress intended the total amount of past-due benefits received by a claimant to be increased by any EAJA award, up to 100% of the total benefits. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002) ("'Thus, an EAJA award offsets an award under Section 406(b), so that the [amount of the total past-due benefits the claimant actually receives] will be increased by the . . . EAJA award up to the point the claimant receives 100 percent of the past-due benefits'" (quoting the Brief for the United States at 3)).

The Court has therefore concluded that "a fee agreement allowing an attorney to collect and retain both an EAJA fee as well as a fee from the client for the same work is 'unreasonable' pursuant to 38 U.S.C. §§ 5904 and 7263." *Carpenter*, 15 Vet.App. at 73; *see Shaw*, 10 Vet.App. at 505 (holding fee agreement was "'unreasonable' on its face to the extent that it may be read as precluding an offset where the Court remands with a direction that the [Board] award benefits that the Court finds are required as a matter of law."). "However, the double-payment proscription would have no

application to the payment of fees under the EAJA and under the fee agreement where the legal work done in connection with those fees is not the same." *Id.* at 504.

The definition of "same work" for EAJA offset purposes has undergone a transformation throughout the Court's jurisprudence. In *Shaw*, the Court held that "same work" does not mean "same claim." *See Shaw*, 10 Vet.App. at 504 (concluding that work on remand was not "same work" as that performed to secure remand where it was "clear on the face of the appellant's contentions in his substantive brief that any legal representation on remand will be different from that performed here because in the Court proceedings the appellant's counsel sought only a remand to the Board and did not seek reversal of the Board decision and a direction that benefits be awarded."). In *Fritz v. West*, the Court considered the reasonableness of a fee agreement providing that no offset of an EAJA award would be made where the Court merely remanded the claim. 13 Vet.App. 190 (1990). On the merits of the veteran's appeal at issue in that case, the Court had granted the parties' joint motion for remand, vacated the Board decision, and remanded the claim for readjudication. *Id.* at 191. The Court upheld the fee agreement provision, noting that "[u]nder *Shaw*, an attorney generally may retain an entire contingency-fee amount if the representation provided before the [Board]/VA subsequent to the attorney's work before the Court involves obtaining more relief from the department than what the appellant received from the Court." *Id.* at 194; *see In re Mason*, 13 Vet.App. 29 (1999).

Concerned that the definition of "same work" set forth in *Shaw* and *Fritz* was too narrow, the en banc Court later overruled *Shaw* and *Fritz*, holding that their definition of "same work" had left "open an opportunity for the subversion of the very purpose of EAJA." *Carpenter*, 15 Vet.App. at 74. The fee agreement at issue in *Carpenter, supra,* provided that the veteran was to pay his counsel 30% of any award of past-due benefits and that an award of EAJA fees was to be offset against the 30% if the Court awarded past-due benefits, but that no offset would be made in the case of remand. The Court noted that Congress passed the EAJA "'to eliminate financial deterrents to individuals attempting to defend themselves against unjustified government action,'" *Abbs v. Principi*, 237 F.3d 1342, 1347 (Fed. Cir. 2001) (quoting H.R. Rep. No. 102-1006, at 25 (1992)); *see Scarborough v. Principi*, 541 U.S. 401, 406 (2004), and that its intended purpose was "'not to provide an attorney a greater fee than contemplated by his fee agreement," but rather to "'pay *non-enhanced* fees for legal

services actually rendered,'" *Carpenter*, 15 Vet.App. at 75 (quoting *Phillips v. General Services Admin.*, 924 F.2d 1577, 1583 (Fed. Cir. 1991).

Ultimately, the Court in *Carpenter* determined that "representation of a client in pursuit of a claim at all stages of the adjudication process" was the "same work" and held that "[t]o the extent the fee agreement . . . provides that *any portion* of the EAJA award will not be offset against the fee paid, or to be paid, by the veteran . . . the [counsel's] fee is excessive and unreasonable." *Carpenter*, 15 Vet.App. at 76 (emphasis added). Simply stated, the Court determined that all work leading to a successful outcome of the veteran's claim was the "same work" for the purposes of EAJA. *Id.*; *see Brown v. Gardner*, 513 U.S. 115, 118 (1994) (noting that interpretive doubt is to be resolved in veteran's favor). The Court reasoned that defining work on remand to be different work than that performed to secure the remand, thus allowing the attorney to retain both a contingency fee and EAJA fees, "would improperly [allow] the EAJA fee to enhance the attorney's fee, rather than to reimburse the veteran for the cost of representation." *Carpenter*, 15 Vet.App. at 76. Therefore, the Court concluded that the failure to provide for an offset of the EAJA fees rendered the fee agreement at issue in *Carpenter, supra*, excessive and unreasonable pursuant to 38 U.S.C. §§ 5904(c) and 7263.

In Ms. Jackson's underlying case, on appeal from this Court, Mr. Carpenter performed work before the Federal Circuit that ultimately led to an award of past-due VA benefits. Applying the meaning of "same work" adopted by the en banc Court in *Carpenter*, it follows that work performed before the Federal Circuit on appeal from this Court in pursuit of securing past-due benefits is the "same work" as that performed before this Court and VA, as it is all work on the "same claim." *Carpenter, supra*. Thus, because all work performed to secure an award of past-due benefits, regardless of the tribunal in which it is performed is the"same work" for the purposes of EAJA, the Court holds that the EAJA fees awarded for work done before the Federal Circuit must be offset against the 30% contingency fee paid by Ms. Jackson to Mr. Carpenter, up to 100% of the total amount of past-due benefits. *See Gisbrecht, supra.* To hold otherwise would render the attorney's fee paid under the fee agreement excessive and unreasonable. *See* 38 U.S.C. § 7263(d); *Carpenter,* 15 Vet.App. at 73.

10

C.  Work Performed in Defense of the EAJA Application

The fee agreement between Ms. Jackson and Mr. Carpenter provides:

> It is further understood that work performed by Attorney in the preparation and prosecution of the EAJA application itself is separately and exclusively compensation to the Attorney.  The fees, cost and expenses awarded for the preparation and prosecution of the EAJA application shall not serve to reduce the contingent fee owed by Client to Attorney.

Mot., Exh. A at 9.  In *Shaw*, the Court specifically left open the reasonableness of the provision requiring that "fees, costs and expenses awarded for the preparation and prosecution of the EAJA application shall not serve to reduce the contingent fee owed by Client to Attorney".  *Shaw*, 10 Vet.App. at 504 ("that issue will be best resolved in the context of a Board or party challenge to an attorney's nonrefunding to a client of the fees-for-fees portion of an EAJA award").  Nor did the Court deal with that issue in *Carpenter*, 15 Vet.App. at 92 (Steinberg, J., dissenting).  However, *Carpenter* plainly establishes that *any fee* payable under a fee agreement must be offset by any EAJA award paid on the same claim and that separate stages of litigation are not parsed out into component parts when determining reasonableness of a fee.  *Id.* at 76.  Thus, in determining whether offset is required for EAJA fees awarded for litigation over the application itself, the Court must address whether the work done to prepare and defend the EAJA application is the "same work" under the "same claim" as that done to secure an award of past-due benefits, or whether the fees for fees litigation is a separate cause of action and therefore not the "same claim."

Once it is determined that an appellant is a prevailing party, there is an assumption that he or she is entitled to EAJA fees unless the position of the government was substantially justified.  The EAJA allows courts to award fees to a prevailing party other than the United States "in any civil action."  28 U.S.C. § 2412(d)(1).  As recognized by the U.S. Supreme Court in *Commissioner v. Jean*, a "civil action can have numerous phases," but "the EAJA–like other fee-shifting statutes–favors treating a case as an inclusive whole, rather than as atomized line-items."  *Jean*, 496 U.S. at 161-62.  The Supreme Court held that courts need not make a second finding of "substantial justification" regarding any Government opposition to an EAJA fee request.  *Id.*; *see* 28 U.S.C. § 2412(d)(1)(A), (1)(B) and (2)(B) (requiring EAJA application to contain an allegation that the position of the Secretary was not substantially justified); *Scarborough v. Nicholson*,

11

19 Vet.App. 253 (2005). An award of some "fees for fees" "would generally follow from success in the basic EAJA application itself," *Cook v. Brown*, 6 Vet.App. 226, 240 (1994), because the merits and the EAJA application comprise a single action. *See Jean, supra.* Thus, the filing of an EAJA application and any ensuing litigation is merely an extension of the underlying claim for benefits. Indeed, a claimant must have appealed a case to the Court to be entitled to EAJA fees because there is no free-standing cause of action by an attorney to file for EAJA fees absent an underlying claim and appeal to the Court.

"Congress intended the EAJA to cover the cost of all phases of successful civil litigation addressed by the statute." *Jean*, 496 U.S. at 167. As EAJA fees are available for time spent defending the EAJA application, it follows, therefore, that defense of the EAJA application is part of the same "civil action" as the cause of action that gave rise to the potential eligibility for an EAJA award. *See Jean*, 496 U.S. at 161 ("[A]bsent unreasonably dilatory conduct by the prevailing party in 'any portion' of the litigation, which would justify denying fees for that portion, a fee award presumptively encompasses all aspects of the civil action.").

Again applying the definition of "same work" set forth in *Carpenter*, we hold that work performed in defense of the EAJA application constitutes the same work as that performed in pursuit of past-due benefits before the Board, the Court, and the Federal Circuit, as EAJA is just one component part of the larger civil action against the government. *See* 28 U.S.C. § 2412(d)(1); *Jean*, 496 U.S. at 166-67. Accordingly, because the EAJA fees for fees award is for the "same work" as that done on the underlying claim, we further hold that that award must also be offset against the 30% contingency fee paid by Ms. Jackson to Mr. Carpenter, up to 100% of the total amount of past-due benefits. *See Gisbrecht, supra.* Additionally, to the extent that the fee agreement at issue allows for any part of the EAJA award to be added to Mr. Carpenter's 30% contingency fee, the agreement is facially unreasonable and unenforceable. *See* 38 U.S.C. § 7263(d); *Carpenter*, 15 Vet.App. at 77 ("[a]n artfully or inartfully drafted contingency fee agreement which would circumvent the letter and spirit of EAJA [is] 'patently unreasonable on its face.'").

12

### III. CONCLUSION

Upon consideration of the foregoing analysis and the parties' pleadings, Mr. Carpenter's motion to withdraw his motion for review of the fee agreement in *Kelly v. Shinseki*, No. 03-1717, is GRANTED. Further, Mr. Carpenter's motion for review of the fee agreement in *Jackson v. Shinseki,* No. 01-1965, is GRANTED and it is ordered that Mr. Carpenter refund to Ms. Jackson that portion of the past-due benefits paid to him under the fee agreement at issue consistent with this decision.