# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-2229

GARY M. JANSSEN, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided   December 27, 2001   )

*John Stevens Berry*, of Lincoln, Nebraska, was on the pleadings for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Acting Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Richard Mayerick,* all of Washington, D.C., were on the pleadings for the appellee.

Before KRAMER, *Chief Judge*, and HOLDAWAY and STEINBERG, *Judges*.

PER CURIAM: The appellant, Gary M. Janssen, appeals, through counsel, a November 1999 decision of the Board of Veterans' Appeals (Board or BVA) that, inter alia, denied as not well grounded, under the then-current version of 38 U.S.C. § 5107(a), claims for Department of Veterans Affairs (VA) service connection for hearing loss, tinnitus, a low-back disorder, and residuals of a left-leg injury; denied a rating in excess of 30% for his service-connected post-traumatic stress disorder (PTSD); and denied a compensable rating for his service-connected residuals of a shell-fragment wound to his left hand and right temple. Record (R.) at 13. The appellant filed a brief contesting only the issue of his PTSD rating and expressly waiving all of the other issues raised before the Board. The Secretary filed a motion to dismiss in part and to summarily affirm in part. Subsequent to those filings, the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA), was enacted. The VCAA, inter alia, amended 38 U.S.C. § 5103 ("Notice to claimants of required information and evidence") and added 38 U.S.C. § 5103A

("Duty to assist claimants"). VCAA § 3(a), 114 Stat. at 2096-98. On November 13, 2000, the Court issued a miscellaneous order of general applicability, *In Re: Veterans Claims Assistance Act of 2000*, 15 Vet.App. 27 (2000) (en banc order), inviting parties who had appeals pending before this Court at the time of or filed after the enactment of the VCAA to address the VCAA's applicability to their claims. In a response to the miscellaneous order, the appellant indicated his desire to abandon all of the claims presented to the BVA except for his claim for a higher initial rating for PTSD. As determined by the Court in an April 23, 2001, order, the Court will not review the Board's decision with respect to any claims other than the one for PTSD, because those claims are considered abandoned. *See Ford v. Gober*, 10 Vet.App. 531 (1997) (issues and claims presented to BVA and not pursued on appeal are considered abandoned). In his response, the appellant also made what the Court construed to be an attempt to waive application of the VCAA to his PTSD claim. Finally, as to his remaining PTSD claim, the appellant requested oral argument.

In the April 2001 order, the Court directed the appellant to submit additional briefing clarifying his position as to what the Court construed to be an attempted waiver of the application of the VCAA to his PTSD claim. The appellant filed a response that expressly proposes that he waive this Court's consideration of the duty-to-assist and notice provisions of the VCAA as part of this appeal. The Court has jurisdiction over the case under 38 U.S.C. §§ 7252(a) and 7266(a), and, for the reasons set forth below, will deny the appellant's request for oral argument, grant the Secretary's motion, affirm the Board's decision as to the appellant's rating for PTSD, and dismiss as to the other issues on appeal.

## I. Facts

The appellant served on active duty in the U.S. Army from September 1968 until April 1970, including service in Vietnam. R. at 16. His service records indicate that he was wounded in combat and was awarded both the Combat Infantry Badge and the Purple Heart. *Id.* In September 1997, he filed a claim for VA disability compensation for service-connected residuals of an artillery shell explosion while in service; he stated that the force of the artillery explosion threw him about "30 or 40" feet. R. at 46-47. He claimed to have suffered shrapnel wounds to his left arm and forehead, as well as tinnitus, PTSD, and injuries to his head, back, and left leg. R. at 46. A VA regional office

(RO) subsequently provided him a physical examination (R. at 51-52) as well as an examination for PTSD in January 1998 (R. at 53), the latter being conducted by Dr. David D. Parrish. In his report, Dr. Parrish, referring to the appellant, stated:

> Subsequent to his discharge, he began to have nightmares that persist up to the present time with the frequency of 2 to 3 times a week with a content primarily of combat and he also has flashbacks 2 or 3 times a week, also with a similar content. He makes a concerted effort to avoid any incidence or thoughts that would trigger traumatic memories. He has avoided movies, books and articles on Vietnam. Subsequent to discharge, he had some difficulty with maintaining a loving, caring attitude and had a definite general loss of interest in life which has persisted up to the present time. Mr. Janssen also has experienced moderate mood shifts with occasional irritability and has had mild to moderate episodic depressions since discharge with no reported anxiety or depressive symptomatology prior to his induction. He does experience some psychoamnesia concerning Vietnam. He has persistent feeling[s] of a foreshortened future and has had ongoing sleep pattern problems with intermittent awakening and awakening about 4 in the morning and being unable to return to sleep. He has exaggerated startle response and hypervigilence. He has experienced problems with concentration and has a tendency to prefer to be by [himself] and has also kept his feelings about Vietnam to himself with only occasional discussions concerning his wartime experiences. This man is self employed. As was stated earlier, he prefers to be by himself and has mentioned that this has affected his relationships to at least a mild to moderate degree.

> MENTAL STATUS EXAM: This veteran appeared for his appointment in a timely manner. He was appropriately dressed and was friendly and cooperative throughout the interview. He was well oriented as to time, place and person. He was able to follow a goal idea and his ability to [perform] abstract conceptualizations was intact. He manifested a mild amount of tension during the evaluation. He did not show any marked depression nor was there evidence of mood shifting during the evaluation. His recent and remote memory was intact. His intelligence was judged as above average. He denied any delusions, hallucinations or suicidal ideation. There is no evidence of any underlying thinking disorder. He said that he has made concerted efforts to avoid stressful situations since he is stress sensitive. His judgment was intact and he is capable of managing his own financial affairs without assistance. His insight is partially impaired.

R. at 53-54. Dr. Parrish concluded that the appellant suffered from chronic PTSD of moderate severity (R. at 54) and determined his Global Assessment of Functioning (GAF) to be between 65 and 70 at that time (R. at 55).

In March 1998, the RO granted service connection for the appellant's PTSD and assigned a 30% disability rating. R. at 70. The RO also granted service connection for a shell-fragment wound

to his right hand, assigning a noncompensable rating. *Id*. The RO denied as not well grounded, under the then current 38 U.S.C. § 5107(a), a number of other claims made by the appellant except one for service connection for a shell-fragment wound to the right temple, which was deferred in order to provide the appellant with further examinations. *Id*. The appellant then filed a Notice of Disagreement.

In June 1998, the appellant was examined again by Dr. Parrish, who essentially repeated his earlier assessment (R. at 89-91) and further noted that the appellant had been taking medication to treat his nightmares and sleep disorders, but that he had discontinued taking the medication because it left him feeling sedated even after awakening (R. at 90). Dr. Parrish increased his assessment of the severity of the appellant's impairment in employment and social relationships from "mild to moderate" to "moderate to severe," and again concluded that the appellant suffered from chronic PTSD of moderate severity, with a GAF score of 65. R. at 90-91. A decision by the RO in August 1998 granted service connection for residuals of a shell-fragment wound to the head, rating that disability as noncompensable, and continued the 30% rating for PTSD. R. at 116. In April 1999, the appellant filed an appeal to the Board seeking an increased rating for each of his service-connected disabilities.

In the November 1999 BVA decision on appeal, the Board, after reviewing the evidence, made a factual determination that a disability rating in excess of 30% for the appellant's PTSD was not warranted because his symptoms more closely approximated symptomatology required for a 30% disability rating as opposed to that required for a 50% rating. Specifically, the Board found:

> Despite the veteran's contentions regarding occupational impairment as a result of his post-traumatic stress disorder, the Board observes that his primary symptomatology is depression, chronic sleep impairment, and anxiety. These symptoms are contemplated in the current provisions for a 30 percent disability rating, as is the impairment reflected by the GAF scores that he has been assigned recently. Conversely, the veteran's lack of formal thought disturbance, and grossly intact memory, as well as his ability to understand and communicate, demonstrate the absence of the symptomatology required for a 50 percent disability evaluation under the schedular criteria. As such, the Board must conclude that the veteran's post-traumatic stress disorder does not more nearly approximate the symptomatology required for a rating in excess of the 30 percent currently assigned, and has not done so since September 1997.

4

R. at 11-12. Additionally, the Board denied the claims for increased ratings for residuals of a shell-fragment wound to the hand and head, finding that each disability failed to meet the minimum criteria necessary to receive a compensable rating. Finally, as to those claims that had been denied by the RO for being not well grounded, the Board concluded that the appellant had not offered evidence sufficient to justify a belief by a fair and impartial individual that any of those claims were plausible and that the appellant had failed to report for a VA medical examination that could have substantiated his claims, and, therefore, the Board continued the RO's decisions.

## II. Analysis

### A. Waiver of Consideration of VCAA on PTSD claim

Although the appeal before the Court challenges a BVA denial of an increased schedular rating for PTSD, the preliminary issue to be addressed is whether an appellant can waive this Court's consideration on appeal of rights guaranteed to him by an act of Congress (i.e., the VCAA). We hold that in cases such as this, where the appellant is represented by counsel, whom the Court presumes to be versed in the facts of the case and to know and to understand the law as it relates to those facts, the appellant can waive this Court's consideration of such rights on appeal.

However, in order to do so, the appellant must first possess a right, he must have knowledge of that right, and he must intend, voluntarily and freely, to relinquish or surrender that right. *See United States v. Olano*, 507 U.S. 725, 732-33 (1993) (holding waiver is the "'intentional relinquishment or abandonment of a known right'" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))); *McCall v. U.S. Postal Service*, 839 F.2d 664, 668 (Fed. Cir. 1988) (upholding employee's waiver of appeal of disciplinary action, U.S. Court of Appeals for the Federal Circuit (Federal Circuit) acknowledged that Merit Systems Protection Board had deemed such "right to appeal . . . susceptible to waiver if the action was the informed, intentional abandonment of a known right, free of any coercion or duress"); *Callicotte v. Carlucci*, 698 F. Supp. 944, 946 (D. D.C. 1988) (recognizing that whether "particular waiver is enforceable . . . [depends on] whether it was made knowingly, voluntarily and freely"). Although the issue of whether a statutory right is waivable depends upon, inter alia, the right at stake, *Olano*, 507 U.S. at 733, "absent some affirmative indication of Congress' intent to preclude waiver, . . . [the Court must] presume[ ] that statutory

provisions are subject to waiver . . . ." *United States v. Mezzanatto,* 513 U.S. 196, 201 (1995) (citing *Evans v. Jeff D.* 475 U.S. 717, 730-32 (1986)). In other words, unless there is specific preclusion to doing so, parties are generally permitted to waive the application of statutes intended for their benefit. *See Peretz v. United States*, 501 U.S. 923, 936 (1991); *Shutte v. Thompson,* 82 U.S. (Wall) 151, 159 (1873).

As stated above, the appellant seeks to waive this Court's consideration on appeal of the duty-to-assist and notice provisions of the VCAA. This Court held in *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991), that when a law or regulation applicable to a claim changes while the claim is pending a final decision, an appellant is entitled to have the claim readjudicated under both versions of the law or regulation so that the appellant may receive the benefit of the more favorable version. That being said, the Court understands that there may be compelling reasons why a particular appellant would not wish to have their claim readjudicated under the duty-to-assist and notice requirements. Despite the generally proclaimant atmosphere in which veterans' law operates, the Court finds no legal reason to prevent such a represented appellant from depriving himself or herself of this Court's consideration on appeal of such additional protections, if that is his or her clearly stated, informed, and voluntary desire. Such a claimant-appellant is in a unique position to make a determination as to whether this Court's consideration on appeal of any expanded duty-to-assist or notice requirements would be beneficial to the appeal. *See* VCAA § 3 (enacting revised section 5103 and new section 5103A). For example, a claimant may reach an informed conclusion, from the unique position he or she occupies, that further development of the claim may not only be unhelpful, but that it may be harmful to that claim. The same may be true as to a physical examination or medical opinion provided by VA. Furthermore, an appellant, in the interest of an expeditious resolution of his or her claim, may reach an informed decision to forego this Court's consideration on appeal of any such rights arising from new law or regulation and may, in fact, prefer an immediate resolution of that claim. It is also important that a remand for the Board to determine under *Karnas* whether the VCAA duty-to-assist and notice amendments are more favorable than the pre-VCAA provisions they supplant would appear to be a pointless exercise, because VA's General Counsel has already determined, in a precedential decision that the BVA is bound to follow, *see* 38 U.S.C. § 7104(c); 38 C.F.R. §§ 14.507, 20.101(a) (2001); *Colayong v . West*, 12 Vet.App. 524,

536-37 (1999); *Sabonis v. Brown*, 6 Vet.App. 426, 429 (1994), that the VCAA is more favorable to claimants than the law in effect prior to its enactment, *see* VA Gen. Coun. Prec. 11-2000 (Nov. 27, 2000).

Today's holding is not contrary to the previous decisions of this Court in *Baker v. West*, 11 Vet.App. 163 (1998), and *Kingston v. West*, 11 Vet.App. 272 (1998) (per curiam order), each of which refused to allow appellants to waive readjudication pursuant to *Karnas*, *supra*, as a result of changes in schedular rating schemes prescribed after each appeal was filed. *Baker* and *Kingston* each involved appeals of denied claims for increased ratings for PTSD. During the appeals, amendments to the disability-rating criteria applicable to the appealed claims were adopted that might have affected the ratings ultimately awarded. However, there, unlike here, the extent of those changes was not knowable insofar as the particular claim involved was concerned until such time as a fact finder applied the facts of the individual case to the new regulations.

Moreover, what the appellant attempts to waive as part of this Court's consideration in this appeal may be perceived as not a substantive right but, rather, several procedural rights – rights as to which he is in the unique position to judge whether their consideration in this appeal would be beneficial to his appeal. To the extent that the VCAA duty-to-assist and notice provisions at issue here are procedural in nature, then, at issue would be not changes in substantive law that might ultimately afford the appellant a greater level of VA benefits but, rather, enhanced procedural protections designed to ensure full and complete development of the claim. If he makes an informed determination that he has already received such procedural protection under the law prior to the VCAA's enactment, then he should be permitted to waive this Court's consideration on appeal of the new, more stringent procedural protections afforded by the VCAA. *See Peretz, supra.* This concept of an appellant's right to make a knowing and voluntary waiver of consideration of procedural protections is neither foreign to nor prohibited by this Court. To the contrary, this Court has long accepted the ability of appellants to waive certain procedural rights, including the following: their right to appeal certain claims denied by the BVA, as happened here (*see Ford, supra*); their right to a personal hearing prior to a Board decision (*see* 38 U.S.C. § 7107(b); 38 C.F.R. §§ 3.103(c), 20.700 (2001); *Anderson v. Brown*, 9 Vet.App. 542, 547 (1996)); and requirements that a Supplemental Statement of the Case be issued when pertinent evidence is submitted by the appellant (*see* 38 C.F.R.

§ 20.1304(c) (2001); *Sutton v. Brown*, 9 Vet.App. 553, 567-69 (1996)); *see also Holliday v. Principi*, 14 Vet.App. 280, 292-93 (2001) (Steinberg, J., concurring). In *Bowling v. Principi,* 15 Vet.App. 1, 17 (2001), we recognized that an "appellant[] can 'expressly waive . . . due process rights [before the BVA] . . . if . . . he [or she] wishes to do so'" (quoting *Allday v. Brown*, 7 Vet.App. 517, 533 (1995)); *see also Velez v. West*, 11 Vet.App. 148, 155 (1998).

To the extent that the waiver of the duty-to-assist and notice requirements attempted here is essentially no different from the waiver of those procedural and due process rights noted above, the appellant has knowledge of certain procedural rights that he possesses and has expressed his intention clearly and unequivocally, and on the advice of competent counsel, to relinquish this Court's consideration of them in this appeal. Nothing further is required. *See Olano*, 507 U.S. at 732-33; *McCall*, *supra*. He has made clear that he believes that the claim under review has been developed as fully and completely as is necessary (or as much as he wishes it to be) for the Court to carry out judicial review as to the denial of that claim, and that he considers further development of the facts and additional notices to be of no benefit to him. If he believes that he can obtain nothing more from a remand for consideration of new protections afforded by the VCAA in terms of development of or notices as to his claim, the Court finds no legal reason on the facts of this case not to permit him to make that choice, especially in the absence of some affirmative indication of Congress' intent to preclude his ability to do so. *See Mezzanatto,* 513 U.S. at 201. Indeed, the distinction between waiver of procedural versus substantive statutory rights has been expressly recognized by the Federal Circuit as a factor in determining whether a Federal employee could waive "*procedures* by which civil servants are hired and fired" (there a right to appeal disciplinary action pursuant to 5 U.S.C. § 7701(a)), which he could waive, and "minimum *substantive* guarantees for individual employees" in the conduct of a collective bargaining agreement entered into pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, which he could not waive. *McCall*, *supra*; *see Callicotte*, 698 F. Supp. at 946-47 (distinguishing *McCall* from situation where Federal employee had signed settlement agreement purporting to waive her right to file discrimination complaint based on asserted status as handicapped person; court struck down waiver as "contrary to public policy" because it constituted "waiver [of] her statutory right" not to be discriminated against based on handicap, a right guaranteed by the Rehabilitation Act of 1973, 29 U.S.C. § 791,

8

*et seq.*, in pursuit of "the public interest in eradicating discrimination in the federal workplace"); *see also Atchison, Topeka and Santa Fe Railway Co. v. Buell*, 480 U.S. 557, 565 (1987) (holding that employee may not waive minimum substantive guarantees provided to individual workers by Federal Employers' Liability Act); *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 745 (1981) (holding that rights provided in FLSA were not waivable in context of collective bargaining agreement); *Lynn's Food Stores, Inc. v. United States, Etc.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982) (to same effect).

If it is assumed that the VCAA is not procedural in nature, *Kingston* and *Baker* are also distinguishable from this case on another basis. In *Baker* and *Kingston*, the Court, in order to address the merits of the claim, would have had to ignore *Karnas* because the appellants in those cases argued for the application of the old version of the PTSD regulations that had changed, whereas here we need not be concerned with *Karnas* because the appellant argues that the statutory provisions added or amended by the VCAA (new law) and the relevant preexisting law (old law) are not implicated by his case; he argues here that the BVA error was in its failure to apply 38 C.F.R. § 4.126(a), which was not affected by the new law, the VCAA.

We also believe it highly significant that in *Williams v. Principi*, 15 Vet.App. 189 (2001) (en banc), *Tellex v. Principi*, 15 Vet.App. 233, 240 (2001), and *Maxson v. Principi*, 15 Vet.App. 241, 242 (2001) (per curiam order), this Court, in effect, permitted waivers of our consideration of the VCAA on appeal. In *Williams*, *Tellex*, and *Maxson*, we declined to address the VCAA issue, in the latter two cases citing a failure on the part of the parties to raise it. Surely an express waiver, such as we have in the instant case, is simply an emphatic way of saying "I choose not to raise this issue." The Court's decisions in *Williams*, *Tellex*, and *Maxson* not to address the potential applicability of a piece of legislation that appears to be capable of as far-reaching ramifications as is the VCAA amounted to a finding of an implied waiver of the appellant's right to have his or her claim considered by this Court on appeal in light of the new protections afforded under the new law, especially given that the parties in those cases were represented by counsel. The logical conclusion stemming from this result is that if informed implied waivers are permissible as to this Court's consideration of VCAA protections on appeal, then so must be expressed waivers. To permit otherwise would be bizarre. Thus, because the en banc *Williams* Court was cognizant of *Baker* and *Kingston*, as well as of the

fact that the VCAA was potentially applicable (*see Holliday*, 14 Vet.App. at 286 (holding VCAA potentially applicable to all claims that were nonfinal)) but yet still chose not to address the issue, we read *Williams* to limit *Baker* and *Kingston* narrowly to situations where the Court determines that the attempted waiver did not reflect a full understanding of its consequences.

Therefore, under the circumstances present here, the Court will permit the represented appellant to waive this Court's consideration of any duty-to-assist and notice rights potentially afforded to him under the VCAA, as they may apply in this appeal to his claim for PTSD. The Court expresses no opinion as to the applicability of the VCAA to the PTSD claim, nor do we express at this time any view as to a pro se appellant's ability to waive our consideration of the VCAA on appeal. *See generally Best v. Principi*, 15 Vet.App. 18 (2001) (per curiam order).

### B. Increased Disability Rating for PTSD

The Board's decision regarding the degree of disability under the rating schedule is a finding of fact subject to review in this Court under the "clearly erroneous" standard of review. *See Johnston v. Brown*, 10 Vet.App. 80, 84 (1997). The Court may not reject the Board's conclusion if it is supported by a plausible basis in the record. *See Sanders v. Derwinski*, 1 Vet.App. 88, 90 (1990); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). The Court is not permitted to substitute its own judgment for a factual determination made by the Board, even if we might not have reached the same conclusion. *See id*.

For PTSD, a 30% disability rating is warranted when there is:

Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

38 C.F.R. § 4.130, Diagnostic Code (DC) 9411 (2001). A 50% disability rating is warranted when there is:

***Occupational*** and social ***impairment with reduced reliability and productivity*** due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired

10

abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

*Id.* (emphasis added).

After a review of the record on appeal, the Court cannot hold that the Board's findings were clearly erroneous. The Board's findings of fact are plausible and were based upon the reports of the appellant's two psychiatric examinations (R. at 53-55, 89-91), which the Board found had indicated that the vast majority of his symptoms fell under the 30% rating criteria and that few, if any, of his symptoms fell under the 50% rating criteria (R. at 11-12). For example, Dr. Parrish indicated that the appellant had nightmares and ongoing sleep problems with intermittent awakening and an inability to return to sleep. R. at 53, 90. Dr. Parrish stated that the appellant had moderate mood shifts with irritability, but that during the examinations he was friendly and cooperative, and that he failed to show any signs of marked depression. R. at 53-54. Dr. Parrish reported that the appellant arrived for his appointment in a timely manner, was appropriately dressed, oriented to time, space, and person, and demonstrated intact judgment. R. at 54, 90. The Board not only highlighted these symptoms (R. at 10-11), but correctly found that in order for the appellant to warrant a 50% rating he must have demonstrated symptoms such as difficulty in understanding complex commands, impairment of short- and long-term memory, impaired judgment, disturbance of mood and motivations, and impairment of abstract thinking (R. at 11-12). Although the Board is not correct insofar as mood disturbances are concerned (Dr. Parrish reported mood shifts, R. at 53), such symptomatology could support either a 30% or a 50% rating, and the Board was correct that none of the other symptoms necessary for a 50% rating were reported by the examiner. Thus, the Court holds that the Board's factual findings as to the degree of impairment are plausible and, accordingly, must affirm the Board's decision.

In his brief, the appellant argues that the Board failed to provide an adequate statement of reasons or bases for its decision as required under 38 U.S.C. § 7104(d)(1). *See Gilbert*, 1 Vet.App. at 56-57. He avers that the Board focused its discussion only upon the appellant's subjective symptomatology and not on the examiner's assessment of the appellant's occupational and social impairment, as is required by 38 C.F.R. § 4.126(a) (2001), which provides in pertinent part: "The rating agency shall assign an evaluation based on all the evidence of record that bears on

occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination."  A reading of the Board's entire decision indicates that it did consider the appellant's occupational and social impairment.  The Board specifically described all the appellant's GAF ratings and concluded that these scores were indicative of a 30% disability rating.  R. at 10-12.  The Board set forth fully a recitation of the evidence describing the appellant's level of disability, including his self-reported patient history (R. at 11-12), throughout the period to be considered in assigning an initial rating and found implicitly that the evidence did not demonstrate that the appellant had the "reduced reliability and productivity" that is the hallmark requirement for a 50% rating for PTSD.  38 C.F.R. § 4.130, DC 9411.  Although the Board's statement of reasons or bases in this respect could have been more complete, we conclude that the decision, taken as a whole, showed adequate consideration of all of the material evidence "that bears on occupational and social impairment" and did not, as prohibited by § 4.126(a), focus "solely on the examiner's assessment of the level of disability at the moment of the examination."  *Id*.

Additionally, the appellant argues that the Board erred by not providing him with staged disability ratings as required by *Fenderson v. West*, 12 Vet.App. 119, 126-27 (1999).  Although the appellant is correct in asserting that the Board is required to determine disability ratings for the full applicable period covered by an initial rating, in this case the Board specifically referred to staged ratings under *Fenderson* (R. at 10) and thereafter found that the appellant's degree of disability had remained constant at a 30% level from the time he filed his claim; the Board thus implicitly found that staged disability ratings would be inappropriate.  R. at 10.  The Board's position is bolstered by the fact that the appellant, in his January 1998 and June 1998 psychiatric examinations, presented virtually identical symptomatology, which in turn resulted in nearly identical diagnoses.  Therefore, the Court must conclude that the Board's decision not to award staged rating was not clearly erroneous.

### III.  Conclusion

On consideration of the foregoing, the pleadings, and a review of the record on appeal, the appellant's request for oral argument is denied because the Court does not believe it would materially assist in the disposition of this appeal.  *See Mason (Sangernetta) v. Brown*, 8 Vet.App.

44, 59 (1995). The Secretary's motion is granted. On the issue of an increased disability rating for PTSD, the Court holds that the appellant has not demonstrated that the Board committed either legal or factual error that would warrant reversal or remand, and has waived this Court's consideration in this appeal of a remand for the Board to determine compliance with any applicable new protections found in the VCAA. The Court is satisfied that the Board decision fulfills the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1), *see Gilbert*, *supra*, and the decision of the Board is AFFIRMED on this matter. As for the other claims denied by the Board, he has expressly withdrawn those claims from this appeal; thus, any appeals as to those claims are DISMISSED.

AFFIRMED IN PART; DISMISSED IN PART.