# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 13-0575(E)

CARROLL B. WESTFALL,                                                    APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS,                             APPELLEE.

Before HAGEL, PIETSCH, and GREENBERG, *Judges*.

## O R D E R

Before the Court is Carroll B. Westfall's July 1, 2014, application pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), for an award of attorney fees and expenses. On September 15, 2014, the Secretary filed a motion to dismiss Mr. Westfall's application as untimely, along with a motion to stay proceedings.

This matter was referred to a panel of the Court to decide two questions: Whether this Court's granting of the appellant's motion to expedite the issuance of mandate results in a final judgment and thus reduces the amount of time that the Secretary has to appeal a decision from this Court to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit); and whether the timeliness of the filing of an EAJA application is affected by the Court's granting of an unopposed motion to expedite the issuance of mandate. The Court has not yet resolved these issues, thus the case meets the criteria for a panel decision. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990); INTERNAL OPERATING PROCEDURE (IOP) I(b)(2) and (4). Oral argument was held on February 9, 2015.

Because the Secretary's lack of opposition to Mr. Westfall's motion to expedite the issuance of mandate cannot be considered a clear and unequivocal waiver of his right to appeal to the Federal Circuit, the Court holds that Mr. Westfall's EAJA application is timely.

## I. FACTS

On April 25, 2014, the Court issued a memorandum decision vacating and remanding a January 2013 Board of Veterans' Appeals (Board) decision that had denied Mr. Westfall's claim for an increased disability rating for post-traumatic stress disorder. *See Westfall v. Shinseki*, No. 13-0575 (Vet. App. April 25, 2014). On May 19, 2014, judgment entered. Mr. Westfall filed a motion requesting that the Court expedite the issuance of mandate due to Mr. Westfall's age and poor health. The Secretary did not oppose the motion. The Court granted the unopposed motion and mandate issued on May 29, 2014.

On July 1, 2014, Mr. Westfall filed an EAJA application. The Secretary opposes that application, asserting that, because it was not filed within 30 days of the issuance of mandate, it is untimely.

## II. ANALYSIS

### A. Judgment and Mandate

The Court has previously counseled that the precise use of legal terms promotes clear thinking and analysis regarding both an appeal to this Court and in the adjudication of claims before VA. *See Hillyard v. Shinseki*, 24 Vet.App. 343, 355 (2011) ("The Court finds it important to clarify the use of the terms that appear in this decision and decisions cited herein in the hope that these definitions will bring some uniformity to the use of these terms in future adjudications and Court decisions.").

As in *Hillyard,* before beginning an analysis of the issues in this case, the Court believes that it is important to clarify and define the relevant terms, specifically: "judgment," "final judgment," "mandate," and "entry of mandate." All of these terms are used in this case, either by the parties, the Court's Rule of Practice and Procedure (Rules), or the statutes impacting the legal issues currently before the Court.

The term "judgment" is often used to describe two distinct events, both having unique legal implications. The first use of the term "judgment" refers to the time at which the Court issues (or announces) its decision in a case. This is also sometimes referred to as "entry of judgment." The date of judgment (or entry of judgment) is important because it "begins the 60-day time period for appealing to the U.S. Court of Appeals for the Federal Circuit." U.S. VET. APP. R. 36(a); *see also* FED. R. APP. P. 4(a)(1)(B) ("The notice of appeal may be filed by any party within 60 days after entry of the judgment or order [being] appealed.").

The second use of the term "judgment" refers to "final judgment," which is the date when the parties can no longer appeal the Court's decision. 28 U.S.C. § 2412(d)(2)(G) ("'[F]inal judgment' means a judgment that is final and not appealable, and includes an order of settlement."); 38 U.S.C. § 7291 (noting that a decision of this Court "shall become final upon the expiration of the time allowed for filing, under section 7292 of [title 38], a notice of appeal from such a decision"); *Black's Law Dictionary* (10th ed. 2014) (hereinafter *Black's*) ("A court's final determination of the rights and obligations of the parties in a case."); 58 Am. Jur. 2d New Trial § 339 ("'Final judgment' means the last date for taking an appeal, if no appeal is taken."). Final judgment generally occurs 60 days after the entry of judgment unless (1) a timely notice of appeal to the Federal Circuit is filed, (2) an order on consent was issued, or (3) if the Court directs otherwise. *See* U.S. VET. APP. R. 41(b). Final judgment is important because it ends the time period for parties to appeal a decision of the Court and begins the 30-day period for a party to submit an EAJA application. *See* 28 U.S.C. § 2412(d)(1)(B).

2

Similar to the term "judgment," the term "mandate" is also frequently used to describe two distinct events: (1) date of mandate and (2) entry of mandate. The date of mandate (hereinafter, "mandate") is when the Court's judgment becomes final. *See* U.S. VET. APP. R. 41; *see also Black's* ("An order from an appellate court directing a lower court to take a specified action."); *Flagship Marine Servs., Inc. v. Belcher Towing Co.*, 23 F.3d 341, 342 (11th Cir. 1994) ("Until the mandate issues, an appellate judgment is not final; the decision reached in the opinion may be revised by the panel, or reconsidered by the en banc court, or *certiorari* may be granted by the Supreme Court."); *Jackson v. Shinseki*, 23 Vet.App. 27, 31 (2009) ("The mandate of the Court is 'evidence that a judgment has become final.'"). When mandate issues judgment becomes final and, as noted above, the parties are no longer entitled to appeal the Court's decision.

The second use of the term "mandate" refers to the "entry of mandate." Entry of mandate is the public notice that judgment has become final and it occurs when the Court's mandate order is entered onto the docket. Although entry of mandate normally occurs on the dates that mandate issues (i.e., final judgment), for administrative reasons, it may follow the actual date of the mandate by some time. In fact, the Court warns of this fact. *See* U.S VET. APP. R. 41, Practitioner's Note ("Because *entry of mandate* on the docket is a ministerial act and may not occur on the *date of mandate*, practitioners are cautioned to use diligence when calculating time periods so as to ensure timely filings.") (emphasis added).

To recap, judgment, or the entry of judgment, is when the Court issues a decision and the 60-day period to appeal to the Federal Circuit begins. Final judgment is the date when the appeal period ends. Final judgment is represented by the issuance of mandate. In other words, final judgment and mandate occur at the same time. They *generally* occur 60 days after the entry of judgment unless an exception arises. *See* U.S. VET. APP. R. 41(b). Once that occurs, the 30-day time period that a party has to submit an EAJA application begins. Finally, the entry of mandate on the docket is merely administrative–providing public notice that mandate has issued–thus, entry of mandate on the docket can occur on a different date than the date mandate issues. Entry of mandate on the docket has no effect on the time periods to appeal a decision or to file an EAJA application.

## B. Filing an EAJA Application

A party must submit an EAJA application "within thirty days of *final judgment* in the action."[1] 28 U.S.C. § 2412(d)(1)(B) (emphasis added); *see also* U.S VET. APP. R. 39(a) ("An application pursuant to 28 U.S.C. § 2412(d) for an award of attorney fees and/or other expenses in a case shall be submitted for filing with the Clerk not later than 30 days after the Court's judgment becomes final."). As noted above, "final judgment" is defined as "a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(2).

---

[1] This Court is authorized to award EAJA fees. 28 U.S.C. § 2412(d)(2)(F) (noting that "court" includes "the United States Court of Appeals for Veterans Claims").

Here, Mr. Westfall argues that the Court's case law demonstrates that judgment does not necessarily become final when mandate issues; rather, he asserts that judgment becomes final 60 days after judgment is entered, regardless of when mandate issues. For this proposition, he relies primarily on *Strouth v. Brown*, 8 Vet.App. 502, 504 (1996), as well as *Mariano v. Principi*, 18 Vet.App. 217 (2004), and *Luyster v. Principi*, 16 Vet.App. 96 (2002). The Secretary, on the other hand, asserts that the Court's judgment became final when–i.e., because–mandate issued.

As stated above in Section A., the Court's judgment becomes final when mandate issues. The Court notes, however, that the case law on this issue is confusing, particularly because of the use of the terms judgment and mandate.

In *Strouth*, the Court issued an order entering judgment and in the order stated that judgment would become final 60 days after the date of the order and that an EAJA application would be due 30 days thereafter. Mr. Strouth submitted his application 93 days after judgment entered (three days late). The Court ultimately dismissed Mr. Strouth's application as untimely and stated:

> An entry of judgment by this Court triggers the 60-day period to appeal the decision to the U.S. Court of Appeals for the Federal Circuit. *See* Rule 4, Federal Rules of Appellate Procedure. If no appeal is filed within the 60-day period, the judgment of the Court becomes final. *See* 38 U.S.C. § 7291(a). Unless there is an order on consent remanding a case under U.S. Vet.App.R. 41(b), the 30-day period to file an EAJA application with the Court begins to run when the judgment becomes final and not when the Court issues its mandate. *See* 28 U.S.C. § 2412(d)(1)(B). Finality is not delayed until the Court issues its mandate, but is instead measured as 60 days after the date stamped on the judgment. *See Shalala v. Schaefer,* 509 U.S. 292, ____, 113 S.Ct. 2625, 2632, 125 L.Ed.2d 239 (1993); *Stillwell v. Brown,* 6 Vet.App. 291, 300 (1994). The issuance of mandate is a ministerial function which is irrelevant to the timeliness of the EAJA application in this case. The 30-day filing deadline is strictly enforced and the appellant's failure to submit an EAJA application within this 30-day time constraint precludes the Court on the facts of this case from considering the merits of the fee application.

*Strouth*, 8 Vet.App. at 504.

First, it appears that the Court in *Strouth* conflates the date of mandate and entry of mandate. The Court's reference to mandate being a "ministerial function" pertains to entry of mandate, *not* the date of mandate. *Id.*; *see also* U.S VET. APP. R. 41, Practitioner's Note ("Because *entry of mandate* on the docket is a ministerial act and may not occur on the *date of mandate*, practitioners are cautioned to use diligence when calculating time periods so as to ensure timely filings.") (emphasis added). Moreover, the Court was again referring to entry of mandate when it stated "[u]nless there is an order on consent remanding a case under U.S. Vet.App.R. 41(b), the 30-day period to file an EAJA application with the Court begins to run when the judgment becomes final and not when the Court issues its mandate." *Strouth*, 8 Vet.App. at 504. Therefore, it is misguided to rely on *Strouth*

4

for the proposition that mandate is "irrelevant" and has no impact on the timeliness of an EAJA application. Mandate is when judgment becomes final and begins the 30-day period to file an EAJA application with the Court.[2]

Second, and in the alternative, at the time of the *Strouth* decision, in January 1996, Rule 41 was different than its current composition. At that time, the rule stated:

> **(a) Date of Issuance.** The mandate of this Court will issue 60 days after the date of entry of judgment pursuant to Rule 36 unless the time is shortened or extended by order. A certified copy of the judgment and a copy of the opinion of the Court, if any, will constitute the mandate. If a timely Notice of Appeal to the United States Court of Appeals for the Federal Circuit is filed with the Clerk, the mandate will issue in accordance with 38 U.S.C. § 7291(a).
>
> **(b) Mandate in Consented Dismissal or Remand.** An order on consent dismissing or remanding a case will also constitute mandate.

U.S. VET. APP. R. 41 (effective Aug. 1, 1994).

Two important distinctions between the 1996 version of Rule 41 and its current composition are: (1) the current rule states "[m]andate is when the Court's judgment becomes final," which was not clearly stated in the 1996 version; and (2) the current rule states "[m]andate *generally* is 60 days after judgment entered *unless* . . . the Court directs otherwise." U.S. VET. APP. R. 41(b) (emphasis added). This exception–when the Court directs otherwise, such as where parties have agreed to the issuance of mandate prior to 60 days after judgment entered–is analogous to the exception stated in *Strouth*, when there is an order on consent remanding a case. In both situations, the parties have consented to the earlier issuance of mandate and are no longer able to appeal.

With regard to *Mariano* and *Luyster*, both cases relied on *Strouth* for the proposition that the issuance of mandate is a ministerial function that is irrelevant to the timeliness of the filing of an EAJA application. *See Mariano*, 17 Vet.App. at 318; *Luyster*, 16 Vet.App. at 98. However, as explained above, *Strouth* was referring to the entry of mandate on the docket and not the issuance of mandate. The issuance of mandate results in judgment becoming final and is very relevant to the timeliness of filing an EAJA application. Additionally and alternatively, neither case involves an instance where a party requested or consented to an expedited issuance of mandate prior to the 60-day period.

---

[2] The Court notes that both cases cited in the relevant portion of *Strouth* support the Court's holding today. *See Shalala v. Schaefer,* 509 U.S. 292 (1993) (noting that a judgment is final when it is no longer appealable); *Stillwell v. Brown,* 6 Vet.App. 291, 300 (1994) (noting that the issuance of mandate is when the 30-day EAJA filing period begins).

Accordingly, the Court concludes that judgment does not automatically become final 60 days after judgment is entered regardless of when mandate issues; rather, as stated in the Rules, mandate is when the Court's judgment becomes final. Mandate generally issues 60 days after the entry of judgment, unless (1) a timely notice of appeal to the Federal Circuit is filed, (2) an order on consent was issued, or (3) if the Court directs otherwise. U.S. VET. APP. R. 41(b). Here, the Court directed otherwise in its May 29, 2014, order when it granted Mr. Westfall's unopposed motion to expedite mandate. Therefore, the 30-day period to file an EAJA application would begin when mandate issued and judgment became final. However, upon reaching this conclusion, the Court must still determine whether the Secretary's time to appeal the decision had expired and whether the Court had the authority to issue mandate at the time it granted Mr. Westfall's unopposed motion.

## C. Appeal to the Federal Circuit

A case may be appealed from this Court to the Federal Circuit if submitted "within the time and in the manner prescribed for appeal to United States courts of appeals from United States district courts." 38 U.S.C. § 7292(a). The "manner prescribed for appeal" in United States circuit courts requires the filing of a notice of appeal with the district court within 30 days after the entry of judgment on the matter from which the appeal is taken. FED. R. APP. P. 3(a)(1); 3(a)(2); 4(a)(1)(A). However, when the United States is a party, as here, the 30-day period is extended to 60 days. FED. R. APP. P. 4(a)(1)(B) ("The notice of appeal may be filed by any party within 60 days after entry of the judgment or order [being] appealed.").

The law is clear that there are certain situations where a party, or the Court, may reduce the time period allotted to appeal a decision to the Federal Circuit. *See Janssen v. Principi*, 15 Vet.App. 370, 373-74 (2001) ("[U]nless there is a specific preclusion to doing so, parties generally are permitted to waive the application of statutes intended for their benefit."); *see also Impresa Construzioni Geom. Domenico Garufi v. United States,* 531 F.3d 1367, 1372 (Fed. Cir. 2008) ("We adopt a uniform rule for EAJA petitions in the Court of Federal Claims, whereby appeal rights from voluntary dismissals are presumed unless expressly disclaimed or specifically prohibited."); *Kiddey v. Shinseki*, 22 Vet.App. 367, 371-72 (2009) (extending the holding in *Impresa* to this Court and further stating "the parties to any litigation before the Federal Circuit are not precluded from including in any motion for a voluntary dismissal a specific provision expressly prohibiting appeal rights from the voluntary dismissal").

However, the question remains, as in the situation currently before the Court, whether the Secretary's lack of opposition to the appellant's motion to expedite the issuance of mandate acts as a waiver of his right to appeal to the Federal Circuit.

If failure to contest the motion amounts to a waiver, then the Secretary's appeal rights are extinguished and the Court's judgment becomes final on the date specified in the Court's order granting the motion to expedite the issuance of mandate. Further, the date specified in the Court's order would begin the 30-day time period for counsel to submit an EAJA application.

6

On the other hand, if the Secretary's failure to contest the motion to expedite the issuance of mandate does *not* amount to a waiver of his right to appeal to the Federal Circuit, then the judgment does not become final and the time to submit an EAJA application had not yet begun to run.

### i. Parties' Arguments

The Secretary argues that by not opposing Mr. Westfall's motion to expedite the issuance of mandate, the Secretary waived any right he had to appeal and, therefore, because mandate issued on May 29, 2014, judgment became final on that date. Accordingly, Mr. Westfall had 30 days from the issuance of mandate to submit his EAJA application–until June 27, 2014–and his July 1, 2014, EAJA application is thus untimely and barred by statute.

In support of his position, the Secretary correctly notes the flawed logic of Mr. Westfall's position. The Secretary rightly asserted that, if judgment did not become final on the date sought by Mr. Westfall, then Mr. Westfall's claim could not, as a matter of law, be acted on by the Board because jurisdiction remained exclusively with the Court. *See Serra v. Nicholson*, 19 Vet.App. 268, 274 (2005) ("[A] case remains pending [at the Court] until final judgment, not merely until judgment."). In other words, because the Secretary did not *expressly* waive his right to appeal, jurisdiction would remain exclusively with this Court. Thus, the Board could not act on Mr. Westfall's claim and he would obtain no advantage from an expedited issuance of mandate, as it would not hasten the execution of the favorable decision issued by the Court when it remanded Mr. Westfall's case to the agency.

Further, if the Board acted on the remand before the case at the Court was final, then any action that the Board took would have questionable validity. *See Cerullo v. Derwinski*, 1 Vet.App. 195, 197 (1991) (noting that, except in circumstances not present here, once the Court has jurisdiction over a claim, the Board is without jurisdiction to take action on the same issues). Therefore, the Secretary asserts that the result Mr. Westfall is currently seeking defies logic, because it would render his own motion to expedite the issuance of mandate entirely meaningless, as it could not achieve the result that he sought.

Moreover, the Secretary notes that, in the motion itself, Mr. Westfall appears to allege that the Court has the ability to reduce the amount of time both parties could appeal to the Federal Circuit and that granting the motion would result in such an effect–a matter at least potentially within the sole jurisdiction of the Federal Circuit to determine. *See* Motion to Expedite Mandate at 1 ("Appellant asks the Court to enter the mandate seven (7) days after the date of this motion. This will provide [the Secretary] with an ample window of time to file an appeal to the Federal Circuit.").

Mr. Westfall argues that judgment did not become final when mandate issued because, at that time, the Secretary was still entitled to appeal the Court's underlying decision to the Federal Circuit. In support of his argument, he points to *Janssen*, 15 Vet.App. at 376, for the proposition that a waiver must be clear and unambiguous and that the Secretary's mere lack of opposition to his motion to expedite mandate cannot be considered a waiver of his right to appeal within the 60-day period

allowed under the Federal Rules of Appellate Procedure. *See* FED. R. APP. P. 4(a)(1)(B) ("The notice of appeal may be filed by any party within 60 days after entry of the judgment or order [being] appealed.") Given that judgment does not become final until the expiration of the time to appeal, Mr. Westfall contends that, therefore, judgment did not become final until July 18, 2014, and his EAJA application was not due until August 17, 2014, 30 days after the date the Secretary's appeal period ended. Accordingly, he contends that his July 1, 2014, EAJA application is timely.

*ii. Case Law*

The Federal Circuit dealt with a similar issue in *Impresa*, which involved an appeal of a decision of the U.S. Court of Federal Claims (Claims Court). Impresa prevailed on one issue at the Claims Court but lost on another and appealed the decision to the Federal Circuit. Subsequently, Impresa moved to withdraw its appeal (i.e., a motion for a voluntary dismissal) and for the Federal Circuit to issue final judgment. That motion was not opposed by the United States. The Federal Circuit granted Impresa's motion, issued final judgment, and issued mandate on the same day. Once final judgment from the Federal Circuit issued, Impresa returned to the Claims Court and filed an application for EAJA fees based on its partial success at that court. As in this case, a dispute ensued over a determination as to the timeliness of the EAJA application.

The Claims Court ruled that the date the filing period began to run was the date that the Federal Circuit declared judgment final and issued mandate. Because Impresa had filed its application for EAJA fees more than 30 days after that date, the Claims Court ruled that Impresa's application was untimely and, therefore, the application was denied. The Secretary argues for this result in this case.

Impresa countered, as does Mr. Westfall, that its EAJA application was timely because the Federal Circuit's decision could not have been deemed final as it was still appealable. Impressa argued that, because the EAJA statute defines "final judgment" as one that is "final and not appealable," and because the United States had a period of 90 days to appeal to the Supreme Court by filing a petition for certiorari, Impresa should have had until 30 days after that 90-day appeal period ended to file its application for EAJA fees. *See* 28 U.S.C. § 2412.

The Federal Circuit noted that the Supreme Court had dealt with the question of finality in the EAJA context by finding that the EAJA filing period begins to elapse only after the time to appeal for all parties has expired. *Impresa*, 531 F.3d at 1369. However, the Supreme Court had not addressed the circumstance of a final judgment entered on voluntary dismissal. The Federal Circuit identified various approaches taken by other circuit courts that had decided this issue and determined that it would adopt a rule that would "'give both courts and litigants clear guidance on what is expected and avoid the unnecessary confusion which accompanied this issue in the past.'" *Id.* at 1371 (citing H.R. Rep. No. 99-120 at 7 (1985), *reprinted in* 1985 U.S.C.C.A.N. at 135). The Federal Circuit also acknowledged that the 30-day EAJA filing period should not operate as "a trap for the unwary." *Id.* (citing *Myers v. Sullivan*, 916 F.2d 659, 669 (11th Cir. 1990)).

After its analysis, the Federal Circuit held: "We adopt a uniform rule for EAJA petitions in the Court of Federal Claims, whereby appeal rights from voluntary dismissals are presumed unless expressly disclaimed or specifically prohibited." *Id.* at 1372. Applying this rule, Impresa's EAJA application could be filed within 30 days of the expiration of the time that the United States had to file its certiorari petition and, thus, was deemed timely.

In February 2009, *Kiddey v. Shinseki*, 22 Vet.App. 367, 371-72 (2009), extended the holding in *Impresa* to apply to this Court. The decision stated:

> Although the Federal Circuit's discussion [in *Impresa*] was focused on EAJA applications filed in the Court of Federal Claims, we see no reason why the Federal Circuit's interpretation of the definition of a judgment that is "final and not appealable" for EAJA purposes, 28 U.S.C. § 2412(d)(2)(G), should not also extend to this Court, which decides EAJA applications pursuant to the same statutory provisions. We therefore adopt the "clear rule" and uniform approach for EAJA applications in this Court that where a notice of appeal to the Federal Circuit is filed and the Federal Circuit issues a dismissal order, appeal rights from those voluntary dismissals "are presumed unless disclaimed or specifically prohibited." *Impresa*, 531 F.3d at 1372; [. . . ]. With the adoption of that ruling to EAJA applications in this Court, the parties to any litigation before the Federal Circuit are not precluded from including in any motion for a voluntary dismissal a specific provision expressly prohibiting appeal rights from the voluntary dismissal.

*Kiddey*, 22 Vet.App. at 371-72 (citations omitted).

### iii. Application

Before applying the holdings in *Impresa* and *Kiddey* to the facts of this case, there are two aspects that must be considered. First is the sentence in *Impresa* that might provide the Court with the authority to terminate a party's right to appeal:

> The variety of possible situations [if the filing date depended on the facts of each case] leads us to conclude that the better procedure is to avoid preliminary litigation of time periods for EAJA filings when there has been a voluntary dismissal, *at least where the order of dismissal does not specifically prohibit appeal*.

531 F.3d at 1371 (emphasis added). The Court's order granting Mr. Westfall's motion provided, "The time for reconsideration, review, or appeal of the Court's decision has expired. That decision is final and is not subject to further review." May 29, 2014, Mandate Order. However, neither *Impresa* nor *Kiddey* addresses a situation involving an order from *this Court* that specifically prohibits an appeal. Both cases appear, on their face, to involve and address orders from the Federal Circuit that specifically prohibit an appeal to *that court*. It is one thing for the Federal Circuit to issue an order prohibiting an appeal to its own court, but it something entirely different for this Court to decide an

9

issue involving the Federal Circuit's jurisdiction by reducing the amount of time that a party has to appeal to the Federal Circuit, without the party's express consent.

Second, the subject-matter jurisdiction of this Court is different from that of the Claims Court. The Claims Court has jurisdiction to decide non-tort cases involving claims for damages against the United States. *See* 28 U.S.C. § 1491. Our Court, however, has the responsibility to decide appeals from final decisions of the Board of Veterans' Appeals that are adverse to the veteran or survivor. As we have stated several times ourselves, and have often been reminded by courts that review our decisions, our cases deal with the rights of a special group whose claims are to be looked at with some degree of solicitude. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428 (2011) ("The solicitude of Congress for veterans is of long standing. And that solicitude is plainly reflected in the [Veterans' Judicial Review Act], as well as in subsequent laws that place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions." (internal citations and quotation marks omitted)); *see also Checo v. Shinseki*, 748 F.3d 1373, 1383 (Fed. Cir. 2014) ("'[I]t was for the purpose of ensuring that veterans were treated fairly by the government and to see that all veterans entitled to benefits received them that Congress provided for judicial review.'") (quoting *Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006)); *AZ v. Shinseki*, 731 F.3d 1303, 1322 (Fed. Cir. 2013) (noting that "the veteran's benefits system is based on 'solicitude for the claimant'") (citation omitted); *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998) ("This court and the Supreme Court both have long recognized that the character of the veterans' benefits statutes is strongly and uniquely pro-claimant.").

One of the challenges of this Court, from its inception, has been to encourage qualified professionals to represent veterans in their appeals to the Court. Encouragement has taken the form of establishing an independent pro bono program managed by the Legal Services Corporation (*see* P.L. 102-229, December 12, 1991, 105 Stat 1701) and the provision in 28 U.S.C. § 2412(d)(2)(F), making it clearly possible for lawyers to win fees under the Equal Access to Justice Act by awarding prevailing party status when a veteran obtains a remand of an appeal to VA, regardless of whether remanding the case actually results in benefits to the appellant. *See* S. REP. 102-342, at 39 (1992) (noting that one of the primary purposes for enacting the EAJA was to "eliminate financial deterrents to individuals attempting to defend themselves against unjustified government action," and [v]eterans are exactly the type of individuals the statute was intended to help"); *Cullens v. Principi*, 18 Vet.App. 11 (2001) (per curiam) (table) (finding that the practice of awarding EAJA fees to pro bono counsel "encourages pro bono representation and has undoubtedly increased the availability of qualified representation to veterans free of charge"); *see also Shalala v. Schaefer*, 509 U.S. 292 (1993) (noting that the "prevailing party" requirement of the EAJA is satisfied when a remand is obtained since it represents "'succe[ss] on any significant issue in litigation which achieve[d] some of the benefit . . . sought in bringing the suit'").

*Impresa* and *Kiddey* provide two scenarios for reducing the amount of time parties have to appeal a decision to the Federal Circuit: (1) the right must be expressly disclaimed by the parties, or (2) specifically prohibited by court order.

With regard to the first option, the Court concludes that the Secretary's mere lack of opposition to Mr. Westfall's motion to expedite the issuance of mandate cannot constitute a clear and unequivocal waiver sufficient to reduce his time period to appeal. *See Janssen,* 15 Vet.App. at 376. Therefore, although it is clear that parties *can* waive their right to appeal and judgment *can* become final earlier than 60 days after judgment enters, in this case, the Secretary did not expressly disclaim his right to appeal by merely not opposing Mr. Westfall's motion.

With regard to the second option, the Court concludes that it does not have jurisdiction to specifically prohibit parties from appealing to the Federal Circuit within the 60 days that they are statutorily entitled to do so, without the parties' express waiver of that right. The ability to limit a party's right to appeal to the Federal Circuit rests in the exclusive jurisdiction of the Federal Circuit. As a result, the Court's May 29, 2014, order granting the expedited issuance of mandate and stating "[t]he time for . . . appeal of the Court's decision has expired[, the decision] . . . is final and is not subject to further review," was erroneous because the Secretary had not expressly waived his right to appeal the decision to the Federal Circuit and his 60-day period to do so had not yet expired. May 29, 2014, Mandate Order. Given this, the Court did not have the jurisdiction to order that the time to appeal to the Federal Circuit had expired, declare that judgment was final, and issue mandate. Accordingly, the time for Mr. Westfall to file his EAJA application was not until 30 days after the Secretary's appeal period ended, or August 17, 2014, and the Court deems that Mr. Westfall's July 1, 2014, EAJA application is timely.[3]

### iv. Effect of Decision

In summation, this case presented the Court with two paths, each possessing its own merits. If the Court found that mandate issued and judgment became final as a result of the Court order granting the issuance of expedited mandate, then Mr. Westfall's appeal could have returned to the Board's jurisdiction immediately, resulting in a quicker adjudication of his case and, thus, an opportunity for a more immediate decision and potentially awarding of benefits. Logically, this would appear to have been the intended purpose of Mr. Westfall's motion and the most likely outcome of the Court's mandate order. However, this situation created uncertainty as to whether the Secretary was still entitled to appeal to the Federal Circuit, whether and when the Board obtained jurisdiction to decide the remanded issue, and also the timing for when Mr. Westfall's EAJA application was due.

But, if the Court were to follow the other path, that is, if the Court held that the Secretary's lack of express waiver of his right to appeal the decision resulted in judgment not becoming final until the appeal period ended, although this would frustrate the intent of Mr. Westfall's motion, it would result in more certainty. Based on the adoption of this rule, both parties in an appeal are aware

---

[3] The Court notes that because judgment did not become final until July 18, 2014, Mr. Westfall's July 1, 2014, EAJA application was actually premature. *See* U.S VET.APP. R. 39(a) (noting that an EAJA application "shall be submitted for filing with the Clerk not later than 30 days after the Court's judgment becomes final"). However, when an application is prematurely filed, the Court will treat it as though it has been filed "on the first day of the 30-day EAJA-appliction period." *Molden v. Peake*, 22 Vet.App. 177, 181 (2008).

that judgment does not become final until the parties' statutory time to appeal the case to the Federal Circuit has expired or both parties have clearly and unequivocally waived that right. Considering the purpose of the Court, the identity of those within its jurisdiction, and the concomitant need to encourage qualified practitioners to represent veterans, a rule providing certainty serves us best. Similar to the Federal Circuit's reasoning in *Impresa*, which the Court adopted in *Kiddey*, this rule will "give both courts and litigants clear guidance on what is expected and avoid [any] unnecessary confusion." *Impresa*, 531 F.3d at 1371 (internal citations omitted).

As a result of this holding, *any* action in the case cannot be taken by VA until a waiver is filed by the Secretary prompting an expedited final judgment or the expiration of the time the Secretary has to appeal. The Court understands that this holding adds yet another legal technicality to the already very technical law in this area and places in the hands of the Secretary the exclusive power to delay the finality of judgment in a case. This delay could come from any number of sources, such as: the time required to deliberate the necessity of appeal, failure of an appellant to pursue an express waiver of the Secretary's right to appeal waiver, or negligence in failing to file the express waiver with the Court. However, despite repeated questions of Mr. Westfall's counsel at oral argument on this point–i.e., the potential impact of this ruling on veterans or their survivors in future cases–counsel continued to argue that the Secretary's lack of opposition to the motion to expedite mandate cannot constitute a waiver of his appellate rights and that a clear waiver was needed.

Thus, the Court finds that the granting of a motion to expedite the issuance of mandate does not, on its own, operate to shorten the time to appeal to the Federal Circuit. Therefore, as explained above, motions to expedite the issuance of mandate cannot operate in a manner so as to shorten the right to appeal unless the parties have articulated in the motion, a clear and unequivocal waiver of their right to appeal. By this holding, both parties are provided with the certainty necessary to determine the date of final judgment and, consequently,  the time period to appeal the decision and to file an EAJA application. Because no such waiver exists here for the reasons described above, Mr. Westfall's application for fees and expenses under the EAJA is timely. Accordingly, the Court orders the Secretary to file a response to Mr. Westfall's EAJA application not later than 30 days after the date of this order.

### III. CONCLUSION

In light of the foregoing, the Court will dismiss the Secretary's motion to stay proceedings as moot, deny the Secretary's motion to dismiss Mr. Westfall's EAJA application as untimely, and accept Mr. Westfall's EAJA application as timely. Further, the Court will order the Secretary to file a response to Mr. Westfall's EAJA application not later than 30 days after the date of this order.

Upon consideration of the foregoing, it is

ORDERED that the Secretary's motion to stay proceedings is dismissed as moot. It is further

ORDERED that the Secretary's motion to dismiss Mr. Westfall's EAJA application as untimely is denied. It is further

ORDERED that Mr. Westfall's EAJA application is deemed timely. It is further

ORDERED that the Secretary file a response to Mr. Westfall's EAJA application not later than 30 days after the date of this order.


DATED: April 28, 2015                                    PER CURIAM

Copies to:

Landon E. Overby

VA General Counsel (027)